IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:21-CV-1051-TKW-HTC |
| WALMART INC. and WAL-MART STORES EAST, LP, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S OPPOSITION TO DEFENDANTS' OMNIBUS MOTION *IN LIMINE***

Plaintiff Equal Employment Opportunity Commission ("EEOC") respectfully submits its opposition to Defendants' Omnibus Motion in Limine. (Doc. 112). For this reason, EEOC asks the Court to deny parts of that motion.

## I.    INTRODUCTION

This is an employment discrimination action against Defendants in which the EEOC alleges that Defendants violated Title VII and that the violation of Title VII resulted in harm to Joelle Saunders ("Saunders"). While working at Defendants' store in DeFuniak Springs, Florida (Store # 1134), James Pollock ("Pollock") sexually harassed Saunders and other female coworkers. EEOC contends that

Defendants knew or should have known of Pollock's sexually harassing conduct toward coworkers. Still, they did not timely investigate or stop Pollock from continuing to harass Saunders and other employees. Nevertheless, Defendants strain to limit issues in the case to a narrow band of facts that serve their narrative that Saunders deserved to be dismissed for attendance issues, that she dissembled when she complained of sexual harassment, and that Defendants are blameless victims of Saunders' manipulation of the system. Defendants seek to exclude clearly relevant evidence and invite the Court to err.

## II.     ARGUMENT

### A.     EEOC Enforcement Actions Litigate the Legality of Employer Conduct.

Because EEOC brings this enforcement action, the focus must be on whether Defendants violated Title VII. Under Title VII, the EEOC is statutorily authorized to bring lawsuits against employers to "prevent any person from engaging in any unlawful employment practice," as set out in 42 U.S.C. § 2000e-2. *See* 42 U.S.C. § 2000e-5(a). EEOC brought this suit pursuant to its enforcement powers under Title VII.

The Supreme Court has recognized the EEOC's overriding public interest in protecting equal employment opportunity through litigation:

> Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is

> guided by "the overriding public interest in equal employment opportunity … asserted through direct Federal enforcement." When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

*Gen. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 326 (1972) (quoting 118 Cong. Rec. 4941 (1972)) (footnote omitted); *Accord EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1291-92 (11th Cir. 2004) (recognizing the broad authority and statutory responsibilities of the EEOC and holding that its enforcement role is incompatible with a finding that a adverse judgment against the plaintiff who filed an EEOC Charge in a private suit did not impair EEOC's authority to bring enforcement actions arising out of that EEOC Charge). Indeed, the Eleventh Circuit has endorsed the Seventh Circuit's statement that "[t]he EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately." *Pemco Aeroplex*, 383 F.3d at 1292 (citing *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002)).

**B.    The Nature of Hostile Environment Claims Under Title VII Requires the Court to Permit the Jury to Consider All the Circumstances Surrounding the Harassment.**

Title VII makes it an "unlawful employment practice for an employer" to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42

U.S.C. § 2000e-2(a)(1). "The phrase 'terms, conditions and privileges of employment evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). While the Supreme Court long ago made clear that hostile or abusive environments arising out of racist or sexist motives are within the ambit of Title VII, lower courts' analytical paradigm for such claims has become increasingly elaborate and complex.

Hostile environment claims require courts to analyze events over time and highly contextualized social interactions. Unlike claims of discrimination under Title VII arising from discrete acts, like failure to hire, promote, or dismissal, the nature of harassment or hostile environment claims are different in that the unlawful employment practice does not typically "occur on any particular day." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Instead, the unlawful employment practice occurs over a series of days or years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *Id.* Hostile environment or workplace harassment claims "are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. "Workplace conduct is not measured in isolation." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 279 (2001) (per curiam). "Rather, the evidence of harassment is considered both cumulatively and in the

4

totality of the circumstances." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc).

The need to consider conduct in context requires courts to take care not to improperly exclude evidence on motions in limine. "Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are not generally amenable to broad per se rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Indeed, Defendants' failure to present specific information regarding the evidence they seek to exclude in limine deprives the Court of the necessary context to determine the relevancy and admissibility of much of the challenged evidence. *See, e.g., EEOC v. Suntrust Bank*, No. 8:12–cv–1325–T–33MAP, 2014 WL 1796681, *4-*5 (M.D. Fla. May 6, 2014) (denying employer's motion in limine as to "me too" evidence in a sexual harassment/hostile environment case in part due to the employer's failure to provide specific information regarding the evidence on which the Court could make a reasoned determination as to relevance and admissibility).

To prove a claim of harassment, the EEOC must prove that the employee on whose behalf the claim was brought: (1) is a member of a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create an abusive working environment; and (5) there is a basis for

holding Defendants liable. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Defendants appear ready to contest all but the first element. The issues relating to the second element are discussed later in this brief.

### C. Defendants' Motion in Limine No. 1 Should Be Denied as Evidence Regarding Pollock's Harassment of Villalobos and Riveras is Relevant, Probative, and Properly Admissible.

In Motion in Limine No. 1, Defendants object to admitting evidence that Pollock sexually harassed two other coworkers: Carolina Villalobos and Destiny Riveras.

The evidence of Pollock's behavior toward Villalobos and Riveras is relevant, and EEOC seeks to use it to prove contested elements of the claim remaining for trial and not in support of now dismissed claims of Villalobos and Riveras.[1]

The evidence of Pollock's behavior is relevant to the element of Defendants' liability, the fifth element of a hostile work environment claim. It is also relevant and proper evidence to refute Defendants' anticipated contention that there was no conduct because of sex, as the third element requires. It is relevant to the fourth element of the claim relating to the severity and pervasiveness of sexual harassment,

---

[1] Nothing in EEOC's argument should be taken as a waiver of its right to appeal any issue regarding the Court's summary judgment rulings as to the claims on behalf of Villalobos and Riveras or as to the retaliation claim on behalf of Saunders. EEOC merely assumes for the sake of argument, as it must at this stage in the proceedings, that those rulings may not be relitigated in this Court absent the Court's reconsideration or appellate action.

which EEOC must use to establish the change in the terms and conditions of employment. Finally, the evidence is relevant to punitive damages.

EEOC has no intention to use any evidence regarding Pollock's harassment of Riveras and Villalobos to make a propensity argument. Under Federal Rule of Evidence, Rule 404(b), evidence of other wrongs or bad acts, such as Pollock's harassment of Riveras and Villalobos, is inadmissible to prove a person's character to show conformity therewith. Still, they may be admissible for some other purpose. Fed. R. Evid. 404(b). In this case, EEOC is not relying on testimony about Pollock's treatment of Villalobos and Riveras to establish that he was a man with the kind of character to sexually harass women to show that he sexually harassed Saunders, which would be impermissible under Rule 404(b). As explained, the evidence is nonetheless directly relevant to several other aspects of proof properly before the Court.

> ### 1. Evidence of Pollock's Actions Toward Riveras and Villalobos Establishes That His Conduct Toward Saunders Was "Because of Sex."

The legal paradigm for hostile work environment claims requires consideration of the context in which Pollock acted and whether Pollock's motive in engaging in the conduct was because of sex rather than another basis. Title VII does not prohibit mere profanity or harassment alone, but rather, it prohibits harassment that discriminates based on a protected category such as sex. *See, e.g., Tonkyro v.*

*Sec'y, Dep't of Veterans Affairs*, 995 F.3d 828, 837 (11th Cir. 2021). "However, the harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1305, 1308-09 (11th Cir. 2016) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (reversing exclusion of "me too" declaration from another employee due to its relevance to whether the harassment the plaintiff experienced from the same harasser was "based on sex"). Harassment because of sex can take the form of unwelcome sexual advances arising out of sexual desire or sexual hazing and intimidation in which sex characteristics, stereotypes, and sexually charged conduct can be weaponized to haze an employee or some combination of both. *See, e.g., Harris*, 510 U.S. at 19 (where the Supreme Court addresses a female employee targeted because of her gender and insulted with sex-based derogation as well as subjected to sexual innuendo and proposals to negotiate her raise at a hotel and holding that an abusive work environment could be actionable even without explicit quid pro quo harassment in which a work term or condition is predicated on sexual favors). Whether Pollock's leering, comments about female coworkers' bodies, and his own sexual arousal or preferences were because of sex does not turn on whether they were an attempt to seduce his coworkers or an attempt to haze them. Either one shows Pollock's actions were based on sex.

Importantly, whether Pollock's actions were based on sex requires consideration of his comments and actions in context. *Id.* at 837-38. Suppose the jury hears that Pollock stands too close and whispers in the ear of Saunders alone. In that case, they might be inclined to believe he was trying to be heard in a loud work environment in the cold room. Still, when the jury hears he also pressed a confining hug on Villalobos, trapping her against a door on the store floor, his behavior appears more likely to be motivated by sex. Similarly, any attempt Defendants might make to argue Pollock's conduct toward Saunders was not "based on sex" would be undercut by evidence of Riveras' testimony regarding Pollock's sexual comments about what he would have to do with his wife later after he watched her bend over while working. This is the kind of "me too" evidence the Eleventh Circuit has found necessary to prove the "because of sex" element and of consequence in determining the action. *Furcron*, 843 F.3d at 1308-09 (reversing summary judgment for employer due to district court error in excluding "me too" declaration).

In *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008), an employee complained that he experienced racial discrimination in the form of a racially hostile environment. The employer moved to exclude testimony from other victims regarding racial discrimination they had allegedly experienced, but the trial court allowed the other victims to testify. *Id.* On appeal, the Eleventh Circuit upheld

the admission of the "me too" testimony, explaining that it was admissible under Federal Rule of Evidence, Rule 404(b) to prove the defendant's "motive, intent, or plan" to discriminate against the employee who is suing. *Id.* In that case, the same bad actor was involved in the experiences of Goldsmith and the "me too" witnesses.

The testimony of Riveras and Villalobos about what Pollock did to them at work at Store 1134 is relevant to show that his actions were because of sex. Defendants have indicated an intent to deny that Pollock's contact with Saunders was anything other than incidental or accidental contact due to cramped working areas. The testimony of Riveras and Villalobos reveals that Pollock had overly close contact with them on the store floor and where the contact could not plausibly have been inadvertent or related to spatial dimensions.

Defendants argue generally that courts are reluctant to consider prior bad acts that do not relate to the plaintiff. For this argument, they cite *Denney v. City of Albany*, 247 F.3d 1172, 1189 (11th Cir. 2001). *Denney* is inapposite as it was not a hostile work environment or harassment case, but rather a case about a particular promotion decision in which the plaintiff sought to use evidence of past promotion decision discrimination by the same employer years prior. *Denney* cites another disparate treatment case regarding discrimination regarding successive hiring decisions. Were this a case involving a large temporal gap or a discrete act discrimination case, there might be something instructive in these cases, but here,

they should not be more persuasive than the binding precedent addressing "me too" evidence and its admissibility in hostile environment cases such as the authorities on which EEOC relies.

Defendants misunderstand the holding of *Phillips v. Smalley Maintenance Servs., Inc.*, 711 F.2d 1524, 1526-27 (11th Cir. 1983).[2] In that case, the court found that the employer subjected the plaintiff to actionable sexual harassment prior to her discharge. *Id.* This was the first type of sexual harassment violation under Title VII, but the court held that the plaintiff suffered no actual damage from that violation. *Id.* The court also addressed a second sexual harassment violation under Title VII, which considered whether the employer violated Title VII when it fired the plaintiff for refusing to engage in sexual activity with the president and principal owner of the company. *Id.* Additionally, the plaintiff brought pendent state law tort claims. *Id.* at 1527. On appeal, the employer argued that the trial court erred when it admitted irrelevant testimony of another female employee subjected to similar treatment, but the Eleventh Circuit disagreed. *Id.* at 1532. The Eleventh Circuit found that in the context of that case, in which plaintiff was trying to establish she was fired for refusing to submit to the company president's sexual demands and the employer was

---

[2] This case was decided in a legal landscape quite different than the one intervening legal precedent has shaped as is evident form the fact that on appeal the employer argued that "sexual harassment of a female employee by a male employer does not constitute discrimination based on sex and is not an unlawful employment practice under Title VII." 711 F.2d at 1428.

arguing that the layoff was unrelated to the employee's sexual refusal, the evidence was properly admitted as relevant to the president's reasons for terminating the plaintiff under Rule 404(b) as it tended to provide motive, intent, or plan of the company president in taking the action at issue in that case: dismissal. *Id.* Defendants' argument stretches this holding far beyond its limit. It ignores how the issue of Pollock's motive and intent is at issue in this case, making the "me too" evidence relevant and admissible under Rule 404(b). Notably, the opinion does not state that "me too" evidence is inadmissible to establish the harassment claim, only that it was properly admissible for the termination-based claim.

### 2.   Evidence of Pollock's Actions Toward Riveras and Villalobos Establishes the Severity and Pervasiveness of His Conduct.

In analyzing whether the conduct was severe or pervasive for the fourth element, courts consider (1) the frequency of the alleged conduct, (2) the severity of the alleged conduct, (3) whether the conduct is physically threatening or humiliating (as opposed to "a mere offensive utterance); and (4) whether the conduct unreasonably interfered with the employee's job performance. *See Mendoza v. Borden Inc.*, 195 F.3d 1238, 1246-47 (11th Cir. 1999); *accord Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). This element also requires evidence both that the plaintiff subjectively perceived the harassment as sufficiently severe or pervasive to alter the terms or conditions of employment and that an objectively reasonable person in the plaintiff's position would also perceive the

harassment to be sufficiently severe or pervasive to alter the terms or conditions of employment considering all the circumstances. *See Adams v. Austal, USA, LLC*, 754 F.3d 1240, 1249 (11th Cir. 2014). In reviewing the portion of the summary judgment decision that turned on whether the conduct at issue was objectively and subjectively sufficiently severe or pervasive to alter the terms or conditions of the workplace and create a hostile or abusive working environment, the Eleventh Circuit in *Adams* addressed the scope of the totality of the circumstances to be considered. *Id.* at 1250. It held that courts conducting the objective assessment from the perspective of a reasonable person in the plaintiff's position may only consider what the plaintiff knew and not facts learned later. *Id.* The Eleventh Circuit specifically stated that it had allowed "as relevant and not overly prejudicial, the admission of racial slurs that an employee did not hear and epithets not directed at the employee" so long as the plaintiff was aware of it during his or her own harassment and the harassment related to the same harasser. *See* 754 F.3d at 1258.

For this case, this holding allows Riveras and Villalobos to testify to any of *their* experiences with Pollock so long as Saunders knew of those experiences during her employment. This might exclude testimony from Villalobos regarding events in November, but only to the extent that her "me too" evidence is offered to establish this part of the analysis. Put another way, to the extent that Saunders knew during her own experience that Pollock had acted similarly toward other female employees;

such evidence is relevant to whether her work environment was hostile and whether his conduct could have altered the terms or conditions of her employment.

The testimony of Riveras and Villalobos is relevant to show not only that Pollock had an intention to discriminate based on sex but also that Defendants permitted a severe and pervasive atmosphere of discrimination on its premises. Such evidence shows the frequency of the occurrences in the workplace and the degree to which the number of people affected made the harassment feel more intimidating. This evidence indicates that harassment was ongoing throughout the relevant period, and Defendants took no action, under their policies or otherwise, to remedy it. Indeed, "me too" evidence of which a plaintiff is unaware is admissible to prove the ineffectiveness of an anti-harassment policy. *See Bagby Elevator*, 513 F.3d at 1286-87 (holding that "me too" evidence is probative of the existence of a hostile work environment and whether the employer permitted a severe or pervasive atmosphere of racial discrimination on its premises). Evidence of the harassment of Riveras and Villalobos tends to make Saunders' testimony about Pollock's sexual harassment of her more probable than it would be without this evidence; thus, it meets the test for relevance under Rules 401 and 402.

> **3.    Evidence of Pollock's Actions Toward Riveras and Villalobos Helps Establish Defendants' Liability for the Work Environment.**

The evidence also shows that Pollock's harassment of female employees was ongoing for a considerable period (Saunders, Riveras, and Villalobos). This fact goes to the liability of the employer element of the proof, which EEOC must establish because the longer the harassment is happening and the more widespread and open it is, the stronger the case for employer knowledge. Defendants are liable if they knew or should have known of the harassment and failed to take prompt remedial action. *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252 (11th Cir. 2003). They are liable if they were "negligent in failing to prevent the harassment from taking place." *See Vance v. Ball State Univ.*, 570 U.S. 421, 448-49 (2013). Evidence that an employer failed to monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed is relevant to the issue of whether the employer was negligent in failing to prevent the harassment from taking place. *Vance*, 570 U.S. at 449. Reporting to a person the employer designates is sufficient to put the employer on notice. *See, e.g.*, *Olson v. Lowe's Home Ctrs. Inc.,* 130 F. App'x 380, 390 (11th Cir. 2005).[3]

---

[3] Because Pollock was a coworker and not a supervisor, Defendants cannot be vicariously liable for any sexual harassment in which Pollock engaged, and the *Ellerth-Faragher* affirmative defense is inapplicable to this case. *See, e.g.,* Vance, 570 U.S. at 431 ("We hold that an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered the employee to take tangible employment actions against the victim); *accord EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 685 (8th Cir. 2012); *Alvarez v. Des Moines Bolt Supply, Inc*., 626 F.3d 410, 419 (8th Cir. 2010).

Finally, EEOC must show a basis on which a jury could find that Defendants are directly liable for their own negligence in maintaining the work environment (rather than vicariously) because Pollock was Saunders' coworker and not a supervisor. "Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* In such cases, the employer is held liable for its own inaction in the face of workplace misconduct when it rises to the level of demonstrable negligence. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998).

The testimony is relevant to show that Defendants permitted a severe and pervasive atmosphere of discrimination on their premises. Such evidence shows the frequency of the occurrences in the workplace and the degree to which the number of people affected made the harassment feel more intimidating. This evidence shows that harassment was ongoing throughout the relevant period, and Defendants took no action, under their policies or otherwise, to remedy it. This evidence tends to make Pollock's sexual harassment of Saunders more probable than without this evidence; thus, it meets the test for relevance as to this element and not in a way that relies on an impermissible propensity argument regarding Pollock.

16

### 4. Evidence of Pollock's Actions Toward Riveras and Villalobos Supports an Inference of Recklessness, which is Relevant to Punitive Damages.

Defendants' response or lack thereof to the complaints about Pollock from Villalobos and Riveras tend to show that Defendants were apathetic to the rights of their employees to work in an environment free of sexual harassment. *See, e.g., Goldsmith*, 513 F.3d at 1281 (examining the relevance of evidence that an employer failed to separate employees after complaints and other evidence of ineffectiveness of company policy to prevent a hostile environment as evidence of reckless indifference to employees' federal rights). The relevance of such evidence is especially pronounced when the employer argues that it attempted to comply with civil rights laws because it had an anti-discrimination policy. *Id.*

For the reasons explained above, the Court should deny Defendants' Motion in Limine No. 1.

### D. Defendants Motion in Limine No. 2 Should Be Denied as Riveras' Testimony That Ricky Harrison Told Her and Saunders That They Would Be Terminated if They Reported Allegations of Harassment is Relevant.

Defendants' Motion in Limine No. 2 attempts to exclude relevant evidence because it potentially contradicts the testimony of another witness, not because it is irrelevant. "[R]elevance is a very low bar, requiring only that the evidence has 'any tendency' to make a fact of consequence more probable." *Mixson v. C.R. Bard Inc.*,

No. 1:21-cv-30, 2022 U.S. Dist. LEXIS 192100, *4 (N.D. Fla. Sept. 23, 2022) (citing Fed. R. Evid. 401). Defendants seek to exclude "Riveras' testimony that Ricky Harrison told her and Saunders that they would be terminated if they reported allegations of harassment from Pollock." (Doc. 112). Harrison's statement to Riveras and Saunders is relevant for several reasons, including Saunders' fear of reprisal for reporting sexual harassment. If this statement is introduced for this purpose, Defendants can cross-examine both Saunders and Riveras about the statement. Their cross-examination can include what they did or did not hear. The jury can then determine the credibility of Saunders and Riveras and what weight to assign to their statements.

In addition, Harrison's statement is relevant for other purposes. Harrison's statement is relevant to show his motive as to why he decided not to report Saunders' complaints of harassment to his supervisors even though Defendants' policy required him to. Harrison's statement about what would likely happen if Saunders or Riveras made reports is circumstantial evidence of his state of mind. Therefore, Defendants' Motion in Limine No. 2 should be denied.

**E.    Defendants' Motion in Limine No. 3 Should Be Denied as Evidence That Saunders Should Not Have Been Terminated or That Her Termination Was a Form of Retaliation Should Not be Excluded if Defendants Put it at Issue.**

Defendants' Motion in Limine No. 3 should be denied. Defendants' proposed stipulations and additions to the exhibit list reveal that they seek to present to the

jury evidence regarding Saunders' attendance violations and its policy regarding attendance and then argue her attendance points were why it fired her on October 1, 2023. Yet, having presented this evidence and its inferences to the jury, Defendants would muzzle the EEOC regarding its natural and evidence-based response. As the Court knows, EEOC presented evidence of another plausible motive for the employment action: retaliation. The Court granted summary judgment on the retaliation claim. This should mean that the evidence of the reason for Saunders' separation from employment will not be litigated in this trial. Yet, Defendants want this Court to allow partial litigation of that very issue.

To establish a theory that Saunders fabricated the claim of harassment in an attempt to prevent Defendants from firing her for her attendance points, Defendants wish to litigate the reason for the dismissal, but without allowing EEOC to present evidence that Defendants may have had dismissed her to protect Pollock, to bury the claim of harassment, and to head off a messy investigation of claims not reported to Global Ethics. Defendants would preclude EEOC from presenting evidence that might allow the jury to question why Defendants enforced the attendance policy strictly concerning Saunders, who had just complained about sexual harassment while allowing other employees to remain over the attendance point limit. This Court should not allow Defendants to inject the issue of the predicate dismissal to distract the jury from its task of focusing on Defendants' actions to prevent workplace sexual

harassment as the Defendants' policies claim they will do. The activities' evidence reveals that the policies are mere window dressing and not mandatory operational rules. Ironically, defendants often wish to keep juries from hearing about dismissed claims because they fear the prejudice that might arise if the jury wonders if they shouldn't have escaped liability on those dismissed claims. Here, Defendants seek not a shield through their motion in limine but rather a sword that would allow them to manipulate the facts in an unfairly prejudicial manner.

If granted, this motion would exclude any evidence relating to any event after the moment Defendants terminated Saunders' employment on the morning of October 1, 2018. That would preclude the jury from learning that Defendants (albeit belatedly) investigated Saunders' complaint or reported any information about Pollock to Global Ethics as Defendants' policies required. It would preclude the jury from learning that when asked about his interaction with Saunders or other female coworkers, Pollock did not broadly deny any actions or statements that a reasonable woman would interpret as sexually offensive but that he did offer to apologize if he had offended anyone. It would preclude the jury from assessing the rigor of Wilcox's questioning of Pollock in this interview, which was less than vigorous. From that lack of rigor, the jury could reasonably infer that Wilcox himself did not understand sexual harassment, inappropriate workplace conduct, or Defendants' policies despite

watching Defendants' training videos for years. Given that he was later dismissed for his workplace sexual misconduct, that inference is even more justified.

In this action, the attitude of Defendants' managers is relevant-- especially the attitude of those who collected statements about the events about which Saunders and others complained and their understanding of Defendants' legal obligations to protect its workers from a sexually hostile work environment. Their understanding of what could constitute that environment is also relevant. Excluding evidence gathered after Defendants dismissed Saunders also bars evidence and testimony that Defendants' managers Rob Haubensack, Rickey Harrison, Nick Stanhope, Griffin Bogart, Courtney Huffstutler, Gerald Huckabee, and Stephanie Bradley had prior personal knowledge of Pollock's actions and statements, which is evidence directly probative of the predicate for Defendants' liability. Allowing Defendants to hide this and other evidence from the jury dovetails with their attack on the EEOC's ability to prove the second, third, fourth, and fifth elements of Saunders' claim. Simply put, EEOC seeks to rely on the post-dismissal evidence not to show subsequent remedial measures but to reveal evidence that contravenes Defendants' suggestions that EEOC cannot prove the elements of the claim.

Defendants request that any evidence contesting Saunders' termination or suggesting Saunders' was terminated in retaliation for raising a complaint of harassment be excluded. Were the evidence on this point limited to a simple, neutral

stipulation that Saunders separated from employment with Defendants on October 1, 2023, and if the Court gave a limiting instruction that the jury is not to consider anything about the reason for the separation as it is not relevant to the issues before them, EEOC could understand that the case law regarding dismissed claims would support this approach. Indeed, EEOC made an argument about dismissed claims in its Motion in Limine. (Doc. 113, ¶ B).[4]

The problem arises when the Court allows Defendants to inject the issue of Saunders' time and attendance violations as evidence of her motive to be untruthful while preventing EEOC from making any meaningful response. Defendants will put Saunders' termination at issue if they argue that Saunders filed suit to seek revenge for the termination of her employment or that her damages suffered were self-inflicted because she failed to follow the time and attendance policy. Indeed, if Defendants cross-examine Saunders about her time and attendance violations, they will inject the issue of the basis for the dismissal, the very thing that they ask the Court to keep EEOC from addressing. The EEOC should be allowed to present evidence to rebut any of these theories or similar theories by the Defendants. This would include presenting evidence and asking questions suggesting Saunders was terminated unfairly.

---

[4] The EEOC makes a similar argument in its Motion in Limine. (Doc. 113, ¶ B).

In a footnote, Defendants propose that this Court read a jury instruction which states, "Saunders was terminated for violation of the attendance policy unrelated to her claim of harassment, and that the jury is not to consider her termination as retaliation or in determining whether Saunders was subjected to harassment." The EEOC objects to this instruction because it is unfairly prejudicial. *See* EEOC's Motion in *Limine* Doc. 113, at ¶ H. The EEOC proposes that both Parties be precluded from mentioning evidence of retaliation and Saunders' time and attendance violations.

EEOC respectfully submits that the Court should deny Defendants' Motion in Limine No. 3.

**F.   Defendants' Motion in Limine No. 4 Should Be Denied as Evidence After Saunders' Termination is Relevant, and the Court Should not Exclude it.**

Completing the attempted clean sweep of the most inculpatory evidence, Defendants contend in Motion in Limine No. 4 that the Court should exclude evidence of any action or conduct after they dismissed Saunders because the evidence is irrelevant and would confuse the jury. The extraordinary audacity of this request is clear in context. Defendants dismissed Saunders on the morning of October 1, 2023. Only after her dismissal did any of Defendants' managers and supervisors report the information they already had possessed for more than six to eight weeks to Global Ethics. Only after October 1, 2023, did Defendants commence

any investigation or take any statements from witnesses regarding Pollock's actions or Saunders' complaints to managers who did nothing. Thus, were the Court to grant this motion, none of Defendants' conclusions that Saunders experienced sexual harassment and Pollock engaged in "gross misconduct" warranting dismissal would be admissible. This conveniently frees Defendants to claim that Saunders cannot show that harassment occurred or was because of her sex. It also allows Defendants to paint Saunders as mendacious in her complaints about Pollock, the same complaints Defendants credited when disciplining Pollock. To clear a path through inconvenient facts that would impair the argument that Saunders was not subjected to unwelcome harassment, Defendants seek to exclude evidence of its own investigation findings, which concluded that Pollock had subjected Saunders to sexualized conduct, which constituted gross misconduct in violation of its policies. They would sweep away all the statements those investigating took from witnesses, including those with managerial responsibilities who observed or heard Pollock in the workplace standing close to female employees, putting his arm around female employees, leaning to whisper in the ear of female employees, and remarking that packaged meat resembled female genitalia. All that evidence Defendants would whisk out of sight, claiming it constituted a subsequent remedial measure undertaken after Saunders was safely out of Pollock's reach because Defendants had dismissed her. The fact that Defendants documented the knowledge of these witnesses and

Pollock's other victims after it fired Saunders does not render that evidence irrelevant or more prejudicial than probative, as EEOC will further detail.

Defendants cite EEOC Enforcement Guidance regarding *vicarious employer liability* in support of this argument (Doc. 112 at pp. 11-12). As previously explained, vicarious liability is not an issue in this case because Pollock was not a supervisor. The sole issue is Defendants' direct liability for their own conduct. EEOC is not seeking to admit this evidence to show anything about subsequent remedial measures. It is relevant because it shows that Defendants concluded that which they now deny: that Pollock actually harassed Saunders and others and that the harassment was because of sex. EEOC does not offer this evidence of Defendants' failure to investigate until sometime after it dismissed Saunders as evidence of an actionable adverse employment action, as Defendants claim. It is offered as directly relevant to disputed issues and elements of her hostile work environment claim. It establishes the continued injury Defendants permitted Pollock to inflict because they did not act earlier on Saunders' complaints or on complaints lower-level managers took to the Assistant Store Manager only to have her snuff them out like candles rather than reporting them to Global Ethics. Motion in Limine Number 4 should be denied.

### G.  Defendants' Motion in Limine No. 5 Should Be Denied as Testimony by Saunders That She Delayed Reporting any Alleged Harassment Because of Rumors She Heard is Admissible.

In Motion in Limine No. 5, Defendants argue that Saunders should be barred from testifying about a rumor about employees getting fired for making complaints about other employees doing inappropriate things together because it is hearsay. Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). If introduced, this evidence would not be submitted to prove the rumors are true. The evidence would be introduced to show its effect on Saunders. *See United States v. Williams*, No. 3:22-cr-154, 2023 U.S. Dist. LEXIS 155531, *5 (M.D. Fla., September 1, 2023). Defendants' motion in limine should be denied because Saunders' testimony is admissible non-hearsay. The jury is entitled to assign weight to Saunders' concerns about making a complaint or submitting a formal statement supporting her complaint to Gerald Huckabee.

> **H.   Defendants' Motion in Limine No. 6, Regarding Christopher Willcox's Employment History and Termination is Premature and Should Be Denied.**

Admission of evidence regarding Chris Wilcox's employment history and termination could be proper under certain circumstances. Any evidence related to Willcox's actions, termination, or complaints against him could be used for impeachment if he testifies. In addition, the evidence could be used to show his knowledge of Defendants' reporting procedures and policies. Willcox was not

deposed, so there is no way to anticipate his testimony. Although Willcox's employment history and termination could be generally irrelevant, Willcox's testimony could put his employment history and termination at issue. This type of evidence should be ruled on at trial.

**I.     Defendants Motion in Limine No. 7 Should Be Denied, and Manuel Villalobos ("Mr. Villalobos") Should Be Permitted to Testify.**

Mr. Villalobos' testimony is relevant because his Complaints arguably catalyzed Defendants' investigation into Pollock. The EEOC's theory is that Defendants only moved to any investigatory action when Mr. Villalobos made a complaint directly and to Global Ethics. Mr. Villalobos' testimony is relevant to Defendants' investigation into Pollock. Moreover, Defendants' inaction when women complained starkly contrasts with the response when Mr. Villalobos complained.

Defendants make a second argument that Mr. Villalobos' complaint had nothing to do with the investigation. This argument is purely a question of fact that the jury should determine. Defendants will have the opportunity to put on witnesses to rebut the EEOC's theory. Therefore, Defendants' Motion in Limine Number 7 should be denied.

**J.     EEOC does not Oppose Defendants' Motion in Limine No. 8.**

EEOC has not listed this document on its exhibit list. Therefore, this

Defendants' Motion in Limine No. 8 is moot.

**K.     Defendants' Motion in Limine No. 9 Should be Denied as Defendants' Financial Condition is Relevant Evidence to Punitive Damages.**

Defendants argue that any reference to Defendants' wealth, assets, sales, revenues, net worth, or any other financial information should be excluded. Defendants' Motion in Limine should be denied because "where there is a claim for punitive damages, a defendant's financial condition becomes relevant because the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award." *Shores of Panama Resort Cmty. Ass'n Inc. v. Halberthal*, Case No. 5:14-cv-294, 2015 WL 3466127, at *1 (N.D. Fla. June 1, 2015) (citing *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010)). Here, the EEOC has made a claim for punitive damages. Therefore, Defendants' financial condition is relevant, and Defendants' Motion in Limine No. 9 should be denied.

**L.     Defendants' Motion in Limine No. 10 Should Be Denied, and Saunders Should be Allowed to Testify that She Could Not Afford Treatment for Her Alleged Emotional Distress Because She Did Not Have a Job.**

Defendants argue that Saunders "did not seek counseling because she could not afford to do so since she did not have a job." (Doc. 112 at 19) Defendants' motion is a cross-examination argument masquerading as a motion in limine. The EEOC is entitled to ask Saunders why she did not seek treatment because it is

relevant. Defendants will then have the opportunity to cross-examine Saunders.

Therefore, Saunders' testimony will not unfairly prejudice Defendants, and

Defendants' Motion in Limine No. 10 is due to be denied.

Date: October 13, 2023

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Birmingham District Office Ridge
Park Place, Suite 2000 1130 22nd
Street South Birmingham,
Alabama 35205

Marsha L. Rucker
Regional Attorney
 Pa. Bar No. 90041

Gerald L. Miller
Assistant Regional Attorney
Ala. Bar No. asb-1454-E52G

Bryan A. Grayson
Supervisory Trial Attorney
Ala. Bar No. ASB-8944-N65G

/s/ *Austin T. Russell*
Austin T. Russell
Trial Attorney
Ala. Bar No. ASB-6418-S13J
austin.russell@eeoc.gov
Tel. (205) 651-7079
Fax. (205) 212-2041

Barbara J. Wells
Trial Attorney
Ala. Bar No. ASB-1658-R58B
barbara.wells@eeoc.gov
Tel. (205) 651-7041
Fax. (205) 212-2041

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned counsel certifies that the Commission's word-processing software counts in this filing 6463 words, including headings, footnotes, and quotations, but omitting the case style, signature block, and certificates.

*/s/ Austin T. Russell*
Austin T. Russell

## CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of the preceding brief electronically on October 13, 2023. The Court's electronic filing systems will deliver a copy to counsel for all parties.

/s/ *Austin T. Russell*
Austin T. Russell
