**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **3:21-CV-1051-TKW-HTC** |
| **WALMART INC. and** | ) | |
| **WAL-MART STORES EAST, LP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF UNITED STATES EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION'S OPPOSITION TO DEFENDANTS'**
**MOTION TO SET STATUS CONFERENCE AND TO SET DEADLINES**

Plaintiff Equal Employment Opportunity Commission ("EEOC") respectfully submits its opposition to Defendants' Motion to Set Status Conference and to Set Deadlines. (ECF 128). The EEOC agrees with Defendants that Court intervention is required to address the current disputes and preserve the January 29, 2024 trial setting while avoiding prejudice to any party. EEOC does not oppose a hearing or court involvement to address document production disputes and set reasonable deadlines. However, EEOC asks the Court to deny the parts of that motion relating to attorneys' fees and cost shifting.

1

## INTRODUCTION

EEOC assigned Austin Russell and Barbara Wells to this case to replace prior counsel months after discovery closed and after the parties filed dispositive motions. (ECF 94 & 106). While preparing for trial in late September 2023, the current attorneys discovered deficiencies in EEOC's responses to discovery and began correcting all the issues they uncovered. Despite EEOC's attempts to correct discovery deficiencies and to cure any arguable prejudice to Defendants from the untimely production, Defendants filed their second motion seeking relief from the Court and cost-shifting pursuant to Federal Rule of Civil Procedure 37 in a month. (*See* ECF 125 & 128).

Since the Court ordered the parties to begin discovery on January 12, 2022 (ECF 11), both the EEOC and Defendants have had changes in counsel and recurrent difficulties in agreeing on discovery for this matter. Both sides have spent unnecessary time and effort on discovery squabbles rather than actual discovery. Disputes have emerged regarding the parties' alleged failure to follow rules, meet deadlines, and follow the stipulated Joint Stipulations and Proposed Order for Discovery Relating to ESI (ECF 26), which the Court adopted on April 22, 2022 (ECF 27). While early discovery disputes focused on Defendants' actions or inaction, the current dispute relates to EEOC's actions or inactions concerning ESI. Current counsel for EEOC discovered these problems only recently and immediately

began to work tirelessly to expeditiously cure the deficiencies in EEOC's collection, review, and production of ESI, particularly concerning ESI responsive to Defendants' requests for production of documents. Unfortunately, the issues were broader than initially believed. While the scope of the problems has required more time to remedy than EEOC would like, EEOC has remained committed to curing the deficiencies transparently and collaboratively while attempting not to shift the burdens of these tasks to Defendants.

EEOC recognizes its duty to produce responsive documents and has attempted to review and provide documents quickly. However, at this point, Defendants are demanding the EEOC conduct a mass collection of ESI from Carolina Villalobos and Destiny Riveras, whose claims the Court dismissed at summary judgment. They seek documents and ESI not remotely related to or responsive to their original discovery requests. EEOC would like to remedy any potential prejudice to Defendants, but it cannot continue to respond to new demands for further collection and searching of ESI without a clear delineation of reasonable limits. EEOC did not object to a conference because it became clear that the parties could not resolve these discovery issues without Court intervention.

On November 20, 2023, Defendants filed a Motion for Status Conference and to Set Deadlines. (ECF 128). The Court granted Defendants' Motion and set a hearing. (ECF 130). EEOC did not object to a status conference and does not object

to reasonable deadlines, but the EEOC objects to Defendants' broad request for attorney's fees. EEOC also disputes many of the Defendants' characterization of events leading to the filing of the instant Motion. EEOC sets forth the relevant procedural history below and arguments against attorney's fees.

<u>**RELEVANT PROCEDURAL HISTORY**</u>

**A. Changes in Counsel of Record Occurred Throughout the Case.**

This lawsuit was filed in September 2021. (ECF 1). Alysia Franklin, an attorney in the EEOC's Birmingham District Office, served as lead counsel throughout discovery and summary judgment briefing. (ECF 4). Effective May 15, 2023, the EEOC assigned Franklin to a detail in the EEOC's Phoenix District Office. Consequently, she filed a motion to withdraw as counsel. (ECF 105). The undersigned counsel filed his notice of appearance and became lead counsel for EEOC on May 30, 2023. (ECF 94). Barbara Wells, who joined the EEOC on June 5, 2023, filed her appearance in the case on July 23, 2023. (ECF 106).

Attorneys from FordHarrison represented Defendants from December 2021 through August 2022. (ECF 8 & 9). The FordHarrison attorneys prepared the Defendants' Rule 26(a)(1) disclosures, responded to written discovery from EEOC, propounded written discovery to EEOC, negotiated the ESI protocol (ECF 26), and negotiated the Protective Order (ECF 40). The Court extended the discovery deadline from May 2022 to October 2022. (ECF 17). On August 10, 2022, attorneys

from Constancy, Brooks, Smith, & Prophete, LLP took over representation of Defendants from FordHarrison. (ECF 43). The Constancy attorney with primary responsibility for ESI issues was Elizabeth Joiner, but Angelique Groza Lyons was also actively involved in taking and defending depositions. On June 1, 2023, Joiner withdrew her appearance because she left the Constancy firm. (ECF 96).

**B. Disputes over Discovery Created Delays for Nearly the Entire Period of Discovery.**

Initially, the Court set a deadline of May 13, 2022, for the completion of discovery. (ECF 12). In February 2022, counsel for the parties began negotiating the 26(f) report, originally due on February 25, 2022 (ECF 11), but counsel struggled to agree on an ESI protocol. (ECF 14). Defendants filed an unopposed motion for an extension of the deadline for filing the complete 26(f) report. (ECF 14). The Court granted an extension to March 4, 2022, for the Report of the 26(f) conference. (ECF 15). The parties filed a Joint Report of the Parties' Rule 26(f) Conference on March 4, 2022, but it did not include a finalized stipulation regarding ESI collection, review, and production. (ECF 16).

EEOC believed the parties had agreed that March 4, 2022, would be the deadline for the Parties to make their Rule 26(a)(1) initial disclosures. EEOC provided the disclosure document and produced 235 pages of documents as part of their disclosures. Defendants did not make their initial disclosures. On March 7, 2022, the Court extended the deadline for the completion of discovery until October

31, 2022. (ECF 17). On March 21, 2022, after an agreed extension, Defendants provided their Rule 26(a)(1) disclosures. Still, they refused to produce the documents identified as those on which they would likely rely until the Parties reached agreement on a confidentiality agreement and an ESI protocol. (ECF 19). Over a month later, the Parties settled on terms for the ESI protocol.

EEOC had sent Defendants a modified proposed ESI protocol as Defendants had rejected the original proposal. (ECF 20). It took the Court's scheduling of a hearing to resolve issues and until April 26, 2022, for the parties to reach an agreement and file the Joint Stipulation and Proposed Order for Discovery Relating to Electronically Stored Information. (ECF 26). The Court entered an Order adopting the Joint Stipulation on April 22, 2022. (ECF 27).

The portions of the Joint Stipulations and Proposed Order for Discovery Relating to ESI most salient to the issues at hand are:

- The parties stipulated that the relevant unstructured ESI sources that the parties believed contained relevant information from which Defendants could expect to receive discovery were the personal email accounts of: Saunders, Riveras, and Villalobos. The ESI protocol makes no mention of collection or preservation of mobile phone data or social media data.[1]

- The parties stipulated that the EEOC would preserve the email messages from Saunders, Riveras, and Villalobos for the period

---

[1] While the Joint Stipulation on ESI discovery does not require EEOC to collect or preserve any ESI other than email from Saunders, Riveras, or Villalobos, it states that prior to the production of any responsive data from social media (e.g., Twitter, Facebook, LinkedIn, etc.) the producing party must discuss potential export formats.

between January 1, 2018, and September 21, 2021, but the EEOC would also preserve any documents it knew contained relevant information regardless of the created or modified date.

- While EEOC would identify and collect relevant information from the sources and custodians above during the defined time frame, the Court could alter the temporal scope.

- EEOC was to load the information into an ESI review platform, use search terms, deduplicate identical files, and attorneys would review for responsiveness. The Parties were to confer to try to reach an agreement on search terms to be used to search in the ESI review platform and share information, including search terms used to find potentially responsive documents. EEOC was to use first pass search terms to provide a hit count report to Defendants' counsel. After this, the parties were to collaborate to refine the search terms as necessary. While Defendants could propose added search terms they believed necessary to find responsive information, the parties understood and agreed that they needed to avoid disproportionate or undue burden and expense.

- The parties addressed production file format.

- The parties preserved review for privilege prior to production.

- The Parties agreed to seek the Court's intervention if further issues arose.

ECF 26 pgs. 2-7, 11, 14, 15.

EEOC propounded interrogatories and requests for production to Defendants on May 20, 2022. Defendants did not respond within the time provided by Rules 33 and 34; instead, they moved for another month to respond to these discovery requests. (ECF 28).

On June 23, 2022, EEOC supplemented its Rule 26(a)(1) disclosures to update the damages calculation. It also clearly said that it sought backpay only for Saunders, not Riveras and Villalobos. (ECF 29). On July 5, 2022, EEOC filed a motion asking the Court to compel Defendants to produce the documents they had identified in their Rule 26(a)(1) disclosures. (ECF 30).

On July 11, 2022, Defendants' original counsel served broad requests for production of documents on EEOC along with interrogatories and requests for admissions. Despite the Parties' agreements in the ESI protocol regarding relevant ESI sources, Defendants asked that EEOC produce all text messages, email messages, social media postings, social media messages, memoranda, correspondence between Saunders, Riveras, Villalobos, and any other aggrieved persons or third parties concerning the allegations of the Complaint or alleged damages. They sought all comments or entries of Saunders, Riveras, and Villalobos made in any journal or on social media or digital communications concerning the allegations of the Complaint or damages sought. They sought any witness statements or documentation of interviews.

Defendants supplemented their disclosures on July 11, 2022, and again on July 13, 2022. (ECF 33, 35, & 36). Defendants opposed the motion to compel, stating that they needed a confidentiality agreement or protective order before they could produce documents. (ECF 37). They also attacked the adequacy of EEOC's Rule

26(a)(1) disclosures. *Id.* In resolving the motion, the Court ordered Defendants to respond fully to the discovery served upon it by no later than July 19, 2022. (ECF 29).

The Parties filed a stipulated protective order on July 15, 2022. (ECF 40). Defendants served unverified interrogatory responses on July 19, 2022, but they did not produce any documents in response to the requests for production. Defendants first produced documents on July 19, 2022, when they produced 1,162 pages. EEOC asked Defendants to address deficiencies in their discovery responses and to produce a hit list as the ESI Protocol required.

EEOC served its responses to the written discovery Defendants had served on it on August 10, 2022. In August 2022, EEOC also supplemented its Initial Disclosures again, adding more witnesses. (ECF 45).

On September 19, 2022, Defendants' new counsel filed an unopposed motion to extend discovery for four additional months to February 28, 2023. (ECF 47). In the two months preceding the filing, the parties had been volleying accusations of deficiencies in the other side's discovery responses back and forth. Neither party had set or taken any depositions as of the motion's date. Later, in September 2022, counsel were arguing about search terms to be used to identify documents in Defendants' ESI. Both sides also prepared privilege logs. Defendants' produced log did not conform with Federal Rules of Civil Procedure requirements. The Parties

argued over the relevant period for Walmart's ESI searches despite the period specified in the ESI protocol. (ECF 53-19). On September 26, 2022, EEOC provided a Revised Privilege Log to Defendants' counsel. The Parties continued to argue about various issues relating to responding to written discovery and producing ESI through the end of December 2022.

On January 13, 2023, EEOC filed a Third Supplement to its Rule 26(a)(1) disclosures and served amended responses to Defendants' requests for production. On January 17, 2023, Defendants gave notice of their intention to issue subpoenas to Saunders, Riveras, and Villalobos, seeking production of many categories of documents that Defendants had already requested that EEOC produce. On January 27, 2023, Walmart made its fourth supplement to its Rule 26(a)(1) disclosures. (ECF 61-3). On January 30, 2023, EEOC filed a motion to quash the subpoenas for documents Defendants had served on Saunders, Villalobos, and Riveras and sought a protective order. Beginning on February 6, 2023, the Parties began depositions. Walmart deposed Saunders, Riveras, Villalobos, and Villalobos' husband. EEOC deposed Mark Bright, Kristi Yarnall, Gerald Huckabee, Stephanie Bradley, and Courtney Huffstutler. EEOC could not depose Lauren Schiller, Defendants' 30(b)(6) representative until April 13, 2023.

**C. Dispositive Motion Practice Results in Dismissal of Some Claims.**

By May 2023, the Parties had finally agreed on the task of dispositive motion practice. EEOC filed a partial motion for summary judgment. Defendants sought summary judgment on all EEOC's claims. On July 17, 2023, the Court ruled on both motions. (ECF 103). The Court rejected the hostile work environment claims EEOC asserted on behalf of Villalobos and Riveras. *Id.* It dismissed the retaliation claim EEOC asserted on Saunders' behalf. *Id.* It found genuine issues of material fact required trial on the sexual harassment claim EEOC brought based on Saunders' experiences. *Id.* As a result of these motions, Saunders no longer has a backpay claim, and Riveras and Villalobos have no claims at all brought on their behalf.

**D. Pretrial Practice Proceeded as Scheduled.**

The Court held a case management conference outlining the upcoming deadlines and procedures for pretrial filings and trial and set a trial date for November 6, 2023. (ECF 109). The Parties conferred and jointly developed a plan to exchange draft portions of the pretrial stipulation before the attorneys' pretrial conference to better prepare for it. The Parties conducted their pretrial conference on September 27, 2023, two days before the Court's deadline.

**E. EEOC Discovers Missing Communications Between Saunders and Her Supervisor.**

While involved in witness preparation for the then-set November 6, 2023 trial, the undersigned discovered that the EEOC did not possess a Facebook Messenger

chain between Rickey Harrison and Joelle Saunders.[2] Saunders testified about this Facebook Messenger communication with Harrison, her former direct supervisor, at her February 6, 2023 deposition. (Saunders' Dep., ECF 84-2 at 229:01-230:09). The Facebook communications between Harrison and Saunders were arguably responsive to Defendants' request for production of documents. Still, it was outside the scope of the identified relevant ESI sources in the ESI Protocol.

Undersigned counsel immediately prepared screenshots of the Messenger communications and two other documents subsequently discovered for production to Defendants on September 29, 2023. In addition, undersigned counsel arranged to collect the entirety of Saunders' Facebook account. On October 4, 2023, EEOC arranged for the download of all Saunders' Facebook data from 2004 through 2023 to get the full text of the Messenger threads of which Saunders had provided screenshots.[3] While preparing motions in limine, deposition designations, and the pretrial stipulation items for filing on October 6, 2023, and October 13, 2023, EEOC's counsel also provided Defendants with the underlying Facebook data relating to the previously produced screenshots on October 6, 2023.

_____

[2] Saunders is the person who filed the Charge of Discrimination which brought this matter to the EEOC. She is an aggrieved party, but not a named plaintiff. The sole plaintiff is the EEOC. Joelle Saunders alleges she suffered sexual harassment while working for Defendants. Rickey Harrison was Saunders' direct supervisor while she worked for Defendants. Unfortunately, he died before he could give a deposition.

[3] It is not possible to download only the portions of a person's Facebook data for a particular date range.

On October 18, 2023, counsel for Defendants tried to contact EEOC's counsel for the first time about the items produced. Despite a conference on October 19, 2023, counsel could not agree to all of Defendants' proposed remedies to EEOC's untimely production on September 29, 2023. Defendants filed a motion for sanctions the day before the pretrial conference. (ECF 125).

On October 23, 2023, the Court entered an Order denying the motion for sanctions. (ECF 127). The Court continued the November 6, 2023 trial to January 29, 2024, and ordered the EEOC to confirm with Saunders "that there are no additional communications that were responsive to Defendants' discovery requests *similar to those discussed at the pretrial conference*, and no later than October 27, 2023, EEOC shall certify to Defendants that no other communications exist or produce any additional communications." (ECF 127; emphasis added). EEOC's counsel reviewed and produced all Facebook Messenger messages to or from Joelle Saunders that were responsive and like the ones discussed at the pretrial hearing. EEOC certified to Defendants that there were no further communications similar to the ones discussed at the pretrial hearing on October 27, 2023. (Attached as Exhibit 1 is the email certification). On October 27, 2023, EEOC also produced a few more Facebook Messenger threads potentially responsive to the Defendants' broad discovery requests.

The week after October 27, 2023, EEOC's current counsel discovered that although the EEOC's e-Discovery review platform contained data downloaded from Saunders' Indeed.com account, the data had not been searched for responsive information. Wanting to be proactive about curing any arguable discovery deficiency, EEOC attorneys searched the Indeed.com data set. Even though the Court had previously dismissed the only claim for which a potential back pay award was possible, EEOC prepared the responsive information from the Indeed.com data for production. This part of the production was about thirty pages, and EEOC produced it to Defendants on November 6, 2023. During this week EEOC's counsel also worked with Saunders to produce Facebook posts and prepared twelve pages of screenshots for production as arguably responsive to Defendants' requests for production. EEOC produced these pages on November 6, 2023.

During this period, EEOC also found that although it had collected emails from Saunders' Yahoo email account[4] through March 2023, it appears that the emails had not been searched for responsive documents. EEOC's current counsel searched the electronic case file for any indication that Defendants had provided search terms for use in this cache of records but found none. Consequently, EEOC completed a first-pass review of the Yahoo email data using search terms it believed were likely

---

[4] The email collection from Saunders' Yahoo account contains more than 49,000 discrete email records going back to at least December 2010. It is not possible to collect a portion of the email data from a specified date range.

to identify documents potentially responsive to Defendants' requests for the production of documents. EEOC kept lists of these search terms and the ones used to try to remove junk email from the data set to accelerate searches. EEOC arranged a telephone call with Defendants' counsel to explain what had been done and produced approximately 36 pages of email messages from Saunders' Yahoo account on November 8, 2023. On November 8, 2008, EEOC sent an email message confirming the conversation and providing a list of search terms used. (*See* Exhibit 2 Nov. 8, 2023 email). As part of this production, EEOC also produced victim impact statements that Saunders' parents prepared at the request of EEOC's prior counsel despite the fact EEOC could have asserted that these statements were attorney work product and not intended for use in the trial as neither parent is a witness, but they were not listed on the privilege log.

During the November 8, 2023, telephone call, Defendants' counsel asked whether EEOC had searched the email or social media for Villalobos and Riveras. EEOC began assessing whether it was possible to obtain ESI for Villalobos and Riveras, who understandably struggled to understand why they must provide this information months after the dismissal of their claims.

The EEOC has also produced interview summaries from a private investigator who made them made after conducting witness interviews[5] in February and May of 2023. EEOC did not list them on a privilege log until after the undersigned obtained them on November 1, 2023. Subject to an agreement limiting waiver associated with production to the summaries themselves, EEOC produced these documents at Defendants' request. Defendants agreed to that condition on November 17, 2023. EEOC produced these statements on that same date.

After conferring with Defendants' counsel about ESI discovery issues, Defendants made a list of demands described in their motion and below.

## ANALYSIS

### I.    EEOC Post Discovery Production of Documents

As set forth above, since uncovering issues with discovery, the undersigned has worked diligently to assess the number of issues and scope of data that needs to be reviewed. Defendants point out in their motion that EEOC has already produced a significant number of documents. EEOC produced these documents in a good faith effort to avoid the Defendants' filing. To attempt to prevent another Rule 37 motion, the undersigned agreed to Defendants' demands and produced documents over

---

[5] The private investigator interviewed: Rob Haubensack, Courtney Huffstutler, Teresa Torres, and Wayne Leach. All of them worked at some point in the store at which Saunders worked. The private investigator also documented his contact with Haubensack's wife when he was looking for him.

which EEOC could have asserted privilege and documents that were arguably non-responsive to Defendants' broad requests for production.[6] EEOC has tried to come to an agreement with Defendants to obtain and review documents that *could* be responsive to prior discovery requests. Attempting to come to a full agreement in such a short period has proven to be an impossible task. Defendants have misunderstood EEOC's explanations and suggestions for proceeding with reasonable discovery in a compressed timeframe. The EEOC is committed to ensuring the case is ready for trial on January 29, 2024, and providing Defendants with any discovery they are owed. However, reasonable parameters must be in place for the EEOC to satisfy its discovery obligations while avoiding unfair prejudice or unreasonably burdensome demands.

## II.   EEOC's Response to Defendants' Demands

### a.   Rivieras' Facebook, Email, and Text Messages

Defendants has requested that EEOC confirm that Destiny Riveras[7] has no relevant text, messages, emails, or social media posts.

---

[6] Defendants' requests for production that are most relevant to the recent issues are 10, 11, 12, 17, 19, 24, 25, 26, & 28. (*See* Exhibit 3 EEOC's First Amended Responses to Defendants' First Requests for Production). EEOC objected to these requests for several reasons including their overbreadth. *Id.*

[7] Riveras was an aggrieved party whose claims were dismissed after summary judgment but remains a witness to testify about what she saw and the alleged harassment she experienced at Walmart by the same individual who harassed Saunders.

### i. Facebook Data

Although not identified as responsive data for collection in the ESI Protocol, EEOC has agreed to retrieve Riveras' Facebook data. However, the parties were still discussing how to handle review and production of responsive portions of that data in our call on November 17, 2023. EEOC asked Defendants for search terms and a date range to narrow its search.

Because of updates in Facebook's security, retrieving Facebook data in a jury-friendly, searchable, and understandable format is impossible. Currently, EEOC can search Facebook data manually online or download it directly from Facebook. When one searches in downloaded Facebook data, the data is not organized in the same way it appears online.

EEOC can search the text of Facebook Messenger exchanges and the text of Facebook posts more efficiently. However, it cannot easily reconstruct associated images and gifs for the posts or messages.

Each post is on a log. The log is a long list of every interaction a user has with Facebook as it relates to their posts on their "feed." Posts can include images, videos, and text. The log also contains every post from when the user created their account. In addition, if a user uploads a photo or video with a post, Facebook stores it separately from the "log" relating to the text associated with the post. Consequently, there is no easy way to associate which photo with which post. Facebook stores logs

in several different groupings. For example, one grouping would be based on the IP address that the user used to upload the post. Other groupings are based on the type of posts (e.g., profile picture).

EEOC has explained the challenges of reviewing Facebook data and the voluminous nature of the data as Facebook maintains it. Defendants' insistence on production of all Facebook data during a relevant period for Riveras (and also Saunders) is both overly broad and not proportionate with the needs of the case. Moreover, it will likely result in Defendants demanding that the Court continue the trial despite the fact that EEOC has produced the content on Saunders' Facebook and will do the same for Riveras' Facebook.

As discussed with the Defendants and testified to at her deposition, Riveras no longer has access to one of her two Facebook accounts. (Riveras Dep., ECF 84-3 at 97:15-98:11). However, EEOC is in the process of collecting the Facebook account to which Riveras still has access. EEOC agreed to this collection to search whether Riveras had Facebook Messenger messages with Walmart employees or the other aggrieved parties. Defendants have suggested that the EEOC provide them with every post from an unnamed relevant period, but the EEOC disagrees with that approach. Defendants stated that the reason for this request is to fish for additional emotional distress evidence on claims that have already been dismissed from this case.

If the Court is inclined to insist that EEOC produce additional Facebook data despite the failure of the parties to agree to its collection and preservation in the ESI Protocol, EEOC proposes that Defendants provide EEOC with a relevant period to search Riveras' posts and Messenger messages with search terms that they provide. EEOC also proposes that Defendants provide names or search terms related to the remaining claims and the narrow scope the Court provided in its Order on Defendants' Motion in Limine (ECF 124).

### ii. Email Data

The ESI Protocol contemplated that the parties would confer and work together to search through the emails of Saunders, Riveras, and Villalobos. It appears that during the discovery period, neither EEOC nor Defendants made serious efforts to comply with the ESI protocol related to the email accounts of Riveras and Villalobos. EEOC has begun the process of collecting Riveras' email account. However, no agreement has been made to search Riveras' email account except for the previous ESI protocol. There is a high likelihood that no responsive emails exist in Riveras' email account.

If the Court orders EEOC to search Riveras' email, EEOC requests that parameters similar to the agreed-upon Joint ESI protocol be imposed. EEOC also proposes that Defendants provide terms related to the remaining claims, a narrow

scope that the Court provided in its Order on Defendants' Motion in Limine. (ECF 124).

### iii.  Text Messages

EEOC has communicated to the Defendants that Riveras testified in February 2023 that she did not have text messages about anything relating to this case or its underlying facts. (ECF 84-3, Dep. Riveras 96:25-97:14). Given that mobile phones are also not identified as relevant ESI in the ESI Protocol, the EEOC should not be compelled to collect and review Riveras' mobile phone data.

### b.  <u>Saunders' Social Media and Email</u>

Defendants have demanded that EEOC make further searches on Saunders' Facebook and email account. Defendants have also demanded Instagram data. (*See* Exhibit 4 email thread between counsel November 6 through 20, 2023).

### i.  Saunders' Facebook and Instagram

Although the ESI Protocol did not specifically identify social media as relevant ESI, EEOC collected the entirety of Saunders' Facebook data. EEOC has searched all Facebook Messenger messages from Joelle Saunders and produced all responsive items. Defendants represent to the Court in their motion that EEOC has not done this, but on numerous occasions, EEOC has certified to Defendants that it searched all of Saunders' Facebook Messenger messages. (ECF 128 at 4).

As explained above, Facebook data is challenging to review and produce. EEOC has already produced many Facebook posts that could have been responsive, some of which are outside the relevant period contemplated in the ESI protocol. Without disclosing privileged communications, the undersigned counsel worked with Saunders to retrieve responsive posts in screenshot format to provide to Defendants. Defendants were unsatisfied with EEOC's production and asked for "all Facebook data." This request was unreasonable. To prevent their Rule 37 motion, EEOC attempted to work with Defendants to provide additional posts. After the Parties' call on November 17, 2023, EEOC did not believe any agreement to run any additional searches had been made.

EEOC is willing to run searches on Saunders' Facebook posts using search terms Defendants provide if Defendants provide them. EEOC will run searches for the terms provided. EEOC will produce posts responsive to Defendants' prior discovery request during the relevant period agreed upon by the Parties or revert to the relevant period the ESI protocol specified.

Lastly, Defendants demanded all Instagram data associated with Saunders. EEOC has no reason to believe Instagram has responsive data. The ESI protocol did not contemplate the collection and review of Instagram data. Defendants' overly broad request is unduly burdensome to EEOC and not proportionate with the needs of the case.

### ii. Saunders' Email

As previously explained, EEOC's counsel has reviewed past communications with Defendants' counsel and could not find any search terms to work from when reviewing Saunders' email account. Neither the EEOC nor the Defendants had created any search terms for the search of the Saunders emails as the ESI protocol contemplated. EEOC created its own search terms and began searching the approximately 49,000 emails. (Exhibit 5 is the list of EEOC's search terms sent to Defendants' counsel after use in searching the email data). EEOC used many search terms and produced all non-privileged emails identified as responsive to Defendants' requests for production.

On November 17, 2023, Defendants provided EEOC with nearly 70 new search terms to run against the emails to create hit lists. (*See* Exhibit 6 additional search terms Defendants provided). Additionally, Defendants informed EEOC that it must produce hit lists showing all email hits that appeared when EEOC's search terms were run against the database to check EEOC's selection of responsive emails from those searches. Defendants wanted the hit lists even for searches EEOC ran to eliminate irrelevant data such as news or shopping-related email messages and messages from Saunders' members of Congress. EEOC produced two of these hit lists (one for "Zoosk" and one for "Avon") on November 20, 2023.

EEOC has agreed to run hit lists for Defendants on Saunders' email account. The hit lists were to include the following fields: Sender of email, recipient of email, Subject, Date of email, and number of hits. No further agreements have been made. EEOC requests that the hit lists be limited to an agreed-upon relevant period to expedite review. Defendants have not agreed to a relevant period for such searches. In addition, EEOC requests that *obvious* spam emails be excluded from the lists.

### c.  <u>Villalobos' Social Media, Email, and Text Messages</u>

Defendants have requested that EEOC confirm that Villalobos has no relevant text messages, emails, or social media posts. In the motion Defendants filed on Monday, November 20, 2023, Defendants claimed that EEOC agreed to retrieve Villalobos' Facebook data. This is untrue. Nevertheless, this statement in the motion caused EEOC's counsel to make additional efforts to verify that the Defendants' request for this data is not likely to lead to any relevant evidence.

Without disclosing privileged communications, the undersigned interviewed Villalobos about potentially responsive ESI again on November 23, 2023.  With Villalobos' consent, the undersigned accessed Villalobos' Facebook account on this same date and scrolled through her timeline to years before the relevant period in the ESI protocol. Villalobos had not posted on Facebook since March 18, 2018. Villalobos also appeared not to have used Facebook Messenger in eight years and may never have used it. Based on the foregoing, it does not appear that the Facebook

account has any information relevant in any way to the case or responsive to Defendants' discovery requests.[8] In this circumstance, acquiring social media and email data would be overly burdensome and disproportionate to the scant likelihood of recovering responsive or relevant information.

Villalobos no longer has the phone that would have had text messages from the relevant period. There is no way to retrieve the phone or the messages. In addition, the ESI protocol did not contemplate collecting text message data.

### d.  EEOC Investigator Notes and EEOC Investigator Memorandum

Defendants have demanded the production of EEOC investigator notes. The EEOC investigator took these notes before filing this lawsuit during the investigation. There are four documents to be discussed here: (1) two copies of the Investigator Memorandum; (2) notes the EEOC investigator made during an interview of Gerald Huckabee in which Defendants' then-counsel participated;[9] and (3) notes the EEOC investigator made during an interview of Stephanie Bradley in which Defendants' then-counsel participated.[10] The EEOC investigator included

---

[8] Defendants questioned Villalobos about social media, texts, and direct messenger during her deposition, and she testified that she did not have any communications. (Villalobos Dep., ECF 84-5 at 181:13-182:11) Defendants also questioned Villalobos about her email account and Facebook posts. Villalobos did not have any emails and did not post about Walmart. (*Id*. at 190:19-23 and 190:24-191:02).

[9] Huckabee was a management-level employee at Defendants' store and involved in investigating Saunders' complaints.

[10] Bradley was Saunders' second level supervisor at the time of the events giving rise to the lawsuit.

notes relating to her interviews of Saunders, Villalobos, and Harrison in her Investigator Memorandum, which also contained her analysis of merits of the Charge of Discrimination and her recommendation regarding whether there was a basis for a cause finding. EEOC contends that all four documents are within the Governmental Deliberative Process Privilege ("GDP") because they reveal the EEOC's internal deliberative process and mental impressions and recommendations about the case. Even the investigator's notes of interviews involved a deliberative decision regarding what information to include and how to phrase it as the investigator in providing her impression of the interview rather than a transcript.

EEOC provided Defendants with its First Revised Privilege Log in September of 2022. EEOC listed both versions of the Investigator Memorandum and the investigator's notes of her interview of Huckabee in EEOC's First Revised Privilege Log and labeled them as "GDP" for Governmental Deliberative Process Privilege. (Exhibit 7 – EEOC's Revised Privilege Log). Due to a coding error in its e-Discovery review platform that EEOC uses to generate its privilege logs, EEOC unintentionally failed to list the investigator's notes of her interview with Bradley on EEOC's First Revised Privilege Log.[11] After producing responsive documents from Saunders' email, EEOC also amended its Privilege Log on November 9, 2023.

_____

[11] When EEOC created the privilege log, it failed to code the EEOC Investigator's interview notes from her interview with Stephanie Bradley. Consequently, the

Defendants have recently taken the position that EEOC must produce these documents and that GDP does not protect them. Although the EEOC disagrees with this assertion, EEOC will produce redacted versions of both Investigator's Memorandums, the Huckabee interview notes, and Bradley's interview notes.

## III.  **Other Issues**

EEOC and Defendants have different understandings of several points mentioned in Defendants' motion:

- EEOC disagrees with Defendants' characterization of the certification the Court ordered it to make at the October 20, 2023 pretrial and submits that it followed the Court's instructions to the letter.

- EEOC disagrees with the Defendants' conclusory assertions that it has been prejudiced or that EEOC has failed to abide by the Court's October 23, 2023 Order.

- Saunders only has one personal email account.

- Any delay in producing any of Saunders' emails relating to her efforts to find a job and mitigate her damages after Defendants terminated her employment is not in any way prejudicial to Walmart as the only claim with backpay as a component was dismissed on summary judgment.

- The Facebook Messenger production is not as large as Defendants suggest. The production included the raw data, which is voluminous and difficult to follow, and far more useable screenshots.

- The delay in producing the witness interviews a private investigator conducted for prior EEOC counsel arose not from EEOC refusing to

---

document was not included on the initial privilege log although it contains information within the Governmental Deliberative Process Privilege. Defendants' motion attempts to claim EEOC's current counsel intentionally misrepresented whether such notes existed or where they would be maintained. That is not the case.

turn them over but rather from Defendants' counsel's delay in agreeing not to argue a broader waiver by their production. EEOC maintains these are work product and need not have been produced but produced them to ameliorate any claimed prejudice and to avoid disputes about the timeliness of the inclusion of these statements on the privilege log.

- The victim impact statements come from Saunders' parents. No party has listed either parent in initial disclosures or otherwise preserved any option to call them as witnesses. Despite knowing these statements would not be admissible in evidence and would not be the subject of witness testimony, Defendants insisted on receiving them, and EEOC produced them.

- Defendants' delay in providing search terms for use in searching Saunders' discovery has impeded expeditious progress on searching the emails and producing hit lists.

- Defendants mischaracterize the communications surrounding the EEOC Investigator Interview notes, which EEOC included on EEOC's privilege log because they are within the Governmental Deliberative Process Privilege. Moreover, EEOC did not refuse to produce them, but it advised Defendants' counsel that higher level approval would be needed to authorize the production of such materials. Trial counsel have now obtained that approval and are producing redacted versions of these documents as Defendants demanded, even though Defendants' counsel was present for two of the interviews memorialized and have access to information about what the witnesses interviewed said.

- Neither the EEOC investigator nor the private investigator made audio recordings of the interviews.

- Defendants address only reopening the pretrial filings for themselves and do not share that EEOC requested Defendants' position on a joint motion to reopen pretrial submissions in light of the new discovery at the beginning of November. Still, Defendants have never indicated whether they oppose reopening the deadlines for EEOC and Defendants. EEOC indicated that its motion would allow all parties to reopen pretrial motions and stipulations in light of the new information. As EEOC told Defendants, some of the data produced is subject to

exclusion under Federal Rules of Evidence 401-403 and 412, and EEOC intends to file a motion in limine on that point.

## IV.   Defendants are not Entitled to Attorney's Fees

When Defendants presented the proposed motion to EEOC to ascertain whether EEOC opposed it, Defendants indicated that they intended to pursue fees for travel to re-depose Saunders, something that should have been addressed at the October 20, 2023 Pretrial Conference when the Court made it clear it would order that limited deposition opportunity solely on the newly produced materials.[12]

During conversations Defendants indicated that they would seek fee shifting for time spent reviewing the information now being produced, which makes no sense as it would have to be reviewed no matter when it was produced. Defendants indicated they would seek fee shifting for fees associated with additional pretrial submissions and presumably the expense of preparing their motion, as they ask for fees resulting from the discovery deficiencies. Defendants seek more than is reasonable and fail to establish a legal basis for the fees sought. This request also does not consider the work that EEOC is doing to decrease the amount of time Defendants have spent on the discovery. Rather than dumping huge numbers of email messages on Defendants to review, EEOC has painstakingly spent its own

---

[12] EEOC asks the Court to consider a reasonable time limit for the deposition of Saunders on the materials as she has already answered questions for a full day. She will bear the inconvenience and distress of a second deposition through no fault of her own.

attorneys' time reviewing the documents to eliminate email messages that hit on search terms but have nothing to do with the issues in the case.

This request for attorneys' fees is inequitable for other reasons. First, the request is premature as the actual volume of additional materials for Defendants to review is still unknown. It may end up being relatively small. And Defendants have not yet incurred those expenses. An Order awarding fees in advance of the work actually being done also creates a perverse incentive for Defendants' counsel to be grossly inefficient in their review of materials and in taking Saunders' deposition.

While EEOC understands Defendants' preference for taking the part of Saunders' deposition relating to the materials discovered in and after September in person, it could reduce the expense of this continuation of the deposition through remote deposition technology. Moreover, Defendants presumably selected Constancy to defend this case while being aware that it would face additional expenses related to their counsels' travel to the Florida Panhandle.

## CONCLUSION

For the reasons set forth above, EEOC respectfully requests this Court deny Defendants' Motion in part as it relates to a request for attorneys' fees and cost shifting. With cooperation from Defendants, EEOC expects to be able to complete the tasks it has agreed to by December 8, 2023. In addition, with cooperation from Defendants, EEOC anticipates that a re-deposition of Saunders would be feasible by

December 21, 2023. EEOC respectfully requests that any deadlines the Court imposes take into account the time needed for the tasks and that EEOC's actions with respect to the tasks depend in part on timely receiving information from Defendants. Furthermore, the EEOC suggests that the scope of the work should comport with the limits of discovery under the Federal Rules of Civil Procedure. While EEOC is committed to ameliorating any prejudice to Defendants for the regrettable issues attributable to its discovery-related deficiencies earlier in this case, the Court should impose reasonable limits on Defendants' request for EEOC's current counsel to produce more than the parties originally agreed in the Joint ESI Protocol and more than they ever sought in discovery when Defendants had every opportunity to file discovery motions with respect to issues they now raise, but elected not to do so.

Date: November 27, 2023

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Birmingham District Office Ridge
Park Place, Suite 2000 1130 22nd
Street South Birmingham,
Alabama 35205

Marsha L. Rucker
Regional Attorney
Pa. Bar No. 90041

Gerald L. Miller
Assistant Regional Attorney
Ala. Bar No. ASB-1454-
E52G

Bryan A. Grayson
Supervisory Trial Attorney
Ala. Bar No. ASB-8944-
N65G

/s/ Austin T. Russell
Austin T. Russell
Trial Attorney
Ala. Bar No. ASB- 6418-
S13J
austin.russell@eeoc.gov
Tel. (205) 651-7079
Fax. (205) 212-2041

Barbara J. Wells
Trial Attorney
Ala. Bar No. ASB-1658-
R58B
barbara.wells@eeoc.gov
Tel. (205) 651-7041
Fax. (205) 212-2041

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned counsel certifies that the Commission's word-processing software counts in this filing 7,128 words, including headings, footnotes, and quotations, but omitting the case style, signature block, and certificates.

/s/ Austin T. Russell
Austin T. Russell

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed this brief on November 27, 2023. The Court's electronic filing system sends notice to all parties indicated on the electronic filing receipt.

/s/ Austin T. Russell
Austin T. Russell