| | |
|---|---|
| **From:** | Lyons, Angelique |
| **To:** | BARBARA WELLS; Morejon, Amanda M.; Borso, Heather |
| **Cc:** | AUSTIN RUSSELL |
| **Subject:** | RE: Follow up to our call today on Walmart case |
| **Date:** | Monday, November 20, 2023 4:19:32 PM |
| **Attachments:** | image003.png |
| | image004.png |
| | image005.png |

Barbara,

I will review your email and let you know if there is anything about which we disagree.

I do note that you did not provide the EEOC's position on our motion for a status conference and to set deadlines. I sent you an email earlier this afternoon and asked for a response by the close of business today. Please refer back to that email and let me know the EEOC's position today, please.

Thanks.

**Angelique Lyons**
**Partner - Tampa and Port St. Lucie Office Head**

**Constangy, Brooks, Smith & Prophete, LLP**
Direct: 772.878.5767 • Direct Fax: 772.905.2541
E-mail: ALyons@constangy.com •View Bio/VCard
1860 SW Fountainview Blvd.
Suite 100
Port St. Lucie, FL 34986
Main: 813.223.7166
***

**From:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Sent:** Monday, November 20, 2023 5:09 PM
**To:** Lyons, Angelique <ALyons@constangy.com>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Angelique,

This email memorializes our recollection and notes about our Friday, November 17, 2023 phone call. Because they are more detailed than the recap you sent, we are sharing them so we can be sure we are on the same page.

## Topic 1: Joelle Saunders' email production:

### Issues relating to our searches and production already made:

You wanted us to clarify some things about how we had located the emails we produced. We explained that we ran searches with our own search terms and then

reviewed all the hits, producing only those actually related to the issues in the case or Joelle's emotional state before or after what happened, which goes to damages. You asked the following questions:

- How were the documents produced identified (who did the review – Austin and I), and did we look at all hits with each search term (yes and only produced those arguably probative)?
- Did we not produce every document that hit? (no)
- Did we search against the whole database of emails? (yes)
- How far did the emails go back? (to the beginning of her email account in 2015 or so)
- Does our software when it is searching do only literal hits or does it do fuzzy hits for similar terms, i.e. if we searched discrimination would it hit on discriminate, discriminating, discriminated, etc.? (We are looking into this to be sure).
- You wanted to know how long it would take to get the hit lists for the search terms we had already run. We estimated that it might be completed by the first week of December. However, this likely can be completed faster based on the search term list you sent. We agreed to send them in batches, so you could review.
- When Barbara was reviewing she did some searches trying to cut down the universe of documents for the next search. Primarily this was an attempt to search on a shopping site (i.e. Amazon) so that those emails from Amazon which have nothing to do with the case could be put in a bucket to the side and not be searched further. You were curious why we searched for the term congressman. This was because we were removing email blasts from Joelle's local congressman that were turning up in our searches. You mentioned that you do not want these type of emails. You then asked for a hit list related to Avon. You also asked for a hit list for the messages Saunders received from Zoosk. We produced those hit lists today.
- We then discussed what information the hit list would show:
  - Total number of email records that were hits for each search term
  - Date of email on hit list
  - Subject of email on hit list
  - Sender of email
  - Recipient of email

In retrospect, we may have items that are hits that are previously produced emails. We will indicate that somehow on each hit list. Also we may have some that are on the privilege log. We will indicate that as well.  Neither point was an issue on the Zoosk or Avon emails which are neither responsive to your discovery requests nor relevant to any issue, but which we provided as a courtesy.

We are currently running the search terms you provided to us on Friday,

November 17, 2023. You agreed that we could send them in batches rather than one at a time.

## Topic 2: Private Investigator Notes/Report on Interviews

The EEOC maintains that documents created by the private investigator are protected attorney work product. However, you agreed that you will not argue there has been any waiver of the work product doctrine beyond the documents themselves (i.e. deposing the PI or Alysia regarding the conversations before or after the interviews) in exchange for these documents being produced as we proposed. These documents were produced on Friday, November 17, 2023.

## Topic 3: EEOC Investigator Annette George's Notes of Interviews of Walmart Employees:

Your position is that any notes that the EEOC investigator took that simply memorialize what Walmart witnesses told her about facts within their knowledge are responsive and should have been produced. There are a couple of categories of issues here:

- The privilege log failed to list the notes that George made after a telephone interview of Stephanie Bradley until we discovered it and added it. You argued waiver and also that the information is relevant and responsive and not within the scope of the GDP privilege. We explained that the notes are in part a documentation of what the witness said but also some of the investigator's impressions. You pointed out that we could and should redact and produce the notes of what the witness said and she should not have to ask for the notes from Walmart's prior counsel who was on the call.
- There was a similar call with Gerald Huckabee. Those notes were on the privilege log. Nevertheless, you want them produced with redactions to show the factual statements that the witness made.
- The investigator also interviewed some other witnesses. Your position is that you are also entitled to these to the extent that they show what these witnesses said. These interviews are only documented in the IM for the case, which Ms. George used as a running place for her notes and impressions. You proposed redaction as a solution for the parts showing recommendations or impressions, or thoughts. The IM is on the privilege log and has been from the beginning.
- We told you we had to discuss this request with supervisors as we do not have independent authority to produce items subject to GDP.

**Topic 4: Facebook Messenger Messages for Saunders:**

We produced the entire message thread for Saunders' Messenger messages with Rickey Harrison, and a few other people, including Jacob, on October 27, 2023. We produced the Jacob thread because Saunders briefly talks about her issues with Walmart. We also produced the gifs, videos, and images that were associated with this message chain. Because you were having issues piecing the data together, we agreed to provide the screenshots to make it easier to read. The caveat was that this is very burdensome and time-consuming and could not be done on every single message chain or post.

**Topic 5: Additional Facebook Post Information for Saunders:**

You had questions about more FB posts from Saunders. You said you want some additional search terms to run on the database. You also want the posts Saunders made in the "relevant period." We proposed that we run searches on the Facebook logs and provide you with screenshots of the relevant posts that got hits. We also asked you to provide the date range you consider the relevant period. We do not have that as of the date of this email.

**Topic 6: Villalobos' Facebook:**

You are not satisfied with the representations (or the prior sworn testimony) from Villalobos that she didn't post about Walmart or harassment. You pointed to a circumstance in which you caught a witness in a lie using Facebook post. We mentioned that producing every post from a "relevant period" would be a challenge even if we agreed. As of today, you have not provided dates for what you consider the relevant period.

**Topic 7: Riveras' Emails**

You are not satisfied with the representations from Riveras. Her email did not contain information related to this case or communications with Walmart employees. We explained as much as we could without disclosing or waiving privileged communications with Ms. Riveras. We explained that we have to have the litigation support staff in Washington ingest the email account and that it is unlikely to happen this week. There is a small number of staff servicing requests from every EEOC office in the country. we also do not have any search terms from you to search in this collection. We don't have any relevant date range from you.

**Topic 8: Riveras' Facebook:**

In a prior email and during this call, we stated that we would collect Destiny Riveras' Facebook. You wanted information on how long it will take to get Riveras' Facebook account.  We said we do not know but are working to have it downloaded as soon as possible. Again, this involves assistance from the litigation support staff who

do not work in our district.

**Topic 9: Status Conference and related issues:**

At the end of our conference call late Friday afternoon, you indicated that you intend to file a motion to:

- Ask the court to have a status conference
- Ask the court to set deadlines (presumably for our production activities although you didn't specify)
- Ask the court to set new deadlines for witness lists, exhibit lists, motions in limine, etc. You seemed to indicate this would only be for Walmart, but obviously we would ask that the extension of any deadlines also apply to EEOC.
- Ask the court to shift the cost associated with the travel of Walmart's counsel to re-depose Saunders and for the time spent on the review of all this additional discovery. The legal basis for this request was not specified.
- We relayed that we are willing to work through the issues, but we cannot agree to entry of sanctions against EEOC.


Regards,

Barbara J. Wells
Trial Attorney
U.S. EEOC-Birmingham District Office/Mobile Local Office
(205) 651-7041



CONFIDENTIALITY NOTICE:  This e-mail message and any attachments are private communication sent by the U.S. EEOC, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, you are notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message or calling 205.651.7041, and delete the e-mail and any attachments from your system. Thank you.

---

**From:** Lyons, Angelique <ALyons@constangy.com>
**Sent:** Friday, November 17, 2023 4:07 PM

**To:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; Morejon, Amanda M.
<amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Barbara and Austin,

Attached is the list of search terms for Ms. Saunders' email account.  As we discussed, you will run
these search terms to incorporate variations of the words.  You will also re-run the EEOC's original
search terms to incorporate variations.  The EEOC has agreed to send us the hit list for the searches
to include to/from, subject and date.

The EEOC will send us the investigator's witness interview notes.

We will provide dates and search terms for the Facebook accounts of Ms. Saunders, Ms. Villalobos
and Ms. Riveras.  We will also provide search terms for Ms. Riveras' email account.

The EEOC will revisit providing us the witness interview notes taken by the investigator, and will let
us know who all the investigator interviewed.

The EEOC will send us Ms. Saunders' messages with Jacob as screen shots.

As mentioned, Walmart intends to file a motion for a status conference and to set deadlines.  You
will let us know on Monday your position on the same.

Thanks.

---

**Angelique Lyons**
**Partner - Tampa and Port St. Lucie Office Head**

Constangy, Brooks, Smith & Prophete, LLP
Direct: 772.878.5767 • Direct Fax: 772.905.2541
E-mail: ALyons@constangy.com •View Bio/VCard
1860 SW Fountainview Blvd.
Suite 100
Port St. Lucie, FL 34986
Main: 813.223.7166
***

---

**From:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>
**Sent:** Friday, November 17, 2023 10:23 AM
**To:** Lyons, Angelique <ALyons@constangy.com>; Morejon, Amanda M.
<amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Angelique,

We are available at 2 p.m. CST (3:00 p.m. EST). Would that work for you? If so, I will send a Teams invite.

Best,

***Austin Russell***
Trial Attorney
U.S. Equal Employment
Opportunity Commission

**From:** Lyons, Angelique <ALyons@constangy.com>
**Sent:** Thursday, November 16, 2023 5:29 PM
**To:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Austin,

Thanks for the update.  I would like to have a call on Friday to discuss in more detail.  Please let me know your availability.

Thanks.

**Angelique Lyons**
**Partner - Tampa and Port St. Lucie Office Head**

**Constangy, Brooks, Smith & Prophete, LLP**
Direct: 772.878.5767 • Direct Fax: 772.905.2541
E-mail: ALyons@constangy.com •View Bio/VCard
1860 SW Fountainview Blvd.
Suite 100
Port St. Lucie, FL 34986
Main: 813.223.7166
***

**From:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>
**Sent:** Thursday, November 16, 2023 6:15 PM
**To:** Lyons, Angelique <ALyons@constangy.com>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Dear Angelique and Amanda,

I appreciate your patience. Barabara was out of pocket today, but we wanted to get you a response today. Below is a further update on the issues that we needed extra time to make determinations on. If you would like to discuss these issues further, we can be available for a call on Friday or Monday. Let us know when would work with your schedule.

**Private Investigator**

The private investigator reports that he did not record the interviews.

**Riveras Email and Social Media**

As you know from your questioning of Ms. Riveras during her February 9, 2023 deposition, Ms. Riveras stated that she no longer had access to one of her Facebook Accounts because Tyler Bradshaw hacked her account and changed the passwords. Because Ms. Riveras cannot access it, she cannot give access to us either. We again asked Ms. Riveras about this issue, and she still does not have access.

As she testified in her deposition, Ms. Riveras maintains a newer Facebook account. Based on our viewing of it on Facebook, it appears to have been created in November 2018. With respect to this account, she could not say whether or not it might contain posts or messages regarding Walmart or its employees. Consequently, we are arranging to collect and review this information as soon as possible. Much like Ms. Saunders' Facebook data, this data is voluminous and difficult to review and comprehend. Would you provide search terms to make the burden of the review of the information extracted by us and you reasonable and proportionate? We are waiting for the information we need from Ms. Riveras to ingest her current Facebook account.

We have confirmed that Ms. Riveras does not use any other social media for purposes of messaging or posting.

Ms. Riveras testified in February that she did not have text messages about anything relating to this case or its underlying facts. We inquired again, and she reaffirmed that she does not have text messages relating to any events giving rise to the litigation or to Ms. Saunders, Mr. Villalobos, or Ms. Villalobos.

Ms. Riveras testified that her communications with Ms. Saunders were via Facebook Messenger. When asked if she had email messages with anyone about the claims in the case or with Ms. Saunders or Ms. Villalobos, she responded that she doesn't believe that she did. It does not seem likely that this source of data, which will be extremely time-consuming to ingest and review, is reasonably calculated to reveal responsive or relevant data.

Based on Ms. Riveras' representations regarding these sources of information, we do not believe there is any justification for us to collect and review information relating to Ms. Riveras' email or social media other than the Facebook account she is currently using, which we are obtaining and reviewing. Anything beyond that would be overly burdensome and disproportionate to the scant likelihood of recovering responsive or relevant information.

**Villalobos Email and Social Media**

As Ms. Villalobos testified on February 16, 2023, she had not communicated with Mr.

Pollock, Ms. Saunders, or Ms. Riveras via text messages, messenger apps, or email. Indeed, she testified that she never communicated with anyone at Walmart with her email. We have spoken to Ms. Villalobos again about such communications, and she reaffirmed she has none.

She testified at her deposition that she did not post about her employment at Walmart on social media. We went back to Ms. Villalobos to ask more broadly about any possible post. Ms. Villalobos reaffirmed that she has not posted on any social media account about this case or Walmart or any underlying facts relating to this case.

Based on Ms. Villalobos' representations regarding these sources of information, we do not believe there is any justification for us to collect and review information relating to Ms. Villalobos' email or social media. Acquiring social media and email data would be overly burdensome and disproportionate to the scant likelihood of recovering responsive or relevant information.

Best,

*Austin Russell*
Trial Attorney
U.S. Equal Employment
Opportunity Commission

---

**From:** Lyons, Angelique <ALyons@constangy.com>
**Sent:** Thursday, November 16, 2023 11:03 AM
**To:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; BRYAN GRAYSON <BRYAN.GRAYSON@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

Barbara,

We have not heard anything from the EEOC regarding any of these outstanding issues. Do you have time for a call today to discuss?

Thanks.

---

**Angelique Lyons**
**Partner - Tampa and Port St. Lucie Office Head**

Constangy, Brooks, Smith & Prophete, LLP
Direct: 772.878.5767 • Direct Fax: 772.905.2541
E-mail: ALyons@constangy.com •View Bio/VCard
1860 SW Fountainview Blvd.
Suite 100
Port St. Lucie, FL 34986
Main: 813.223.7166
***

**From:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Sent:** Wednesday, November 8, 2023 8:16 PM
**To:** Lyons, Angelique <ALyons@constangy.com>; Morejon, Amanda M.
<amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; BRYAN GRAYSON
<BRYAN.GRAYSON@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

**Dear Angelique and Amanda,**

Thank you for your patience. We have been working on readying the emails from the search terms for production and will get those to you today via a separate email message with them attached.  Austin manually Bates numbered them because production requests to our litigation support group take a minimum of three days. Below is a further update.

**Discovery Item Update:**

**Email**
Attached is a document with the search terms used to search Saunders' email (foxgloves_and_ivy1390@yahoo.com). We anticipate producing approximately 25 emails today, which have been identified using search terms. (EEOC_0000541 to EEOC_0000569).

**Victim Impact Statements**
The Victim Impact Statements we have located did not exist prior to the last iteration of the privilege log. Austin and I didn't know these existed until we began our review of the Saunders emails. We are producing these today (EEOC_0000570 to EEOC_0000573). As I previously explained, we are not calling these witnesses or using the documents. They were created at the request of counsel and emailed to her without comment so we are only producing the statements themselves.

**Instagram**
Ms. Saunders' Instagram is not private and can be viewed here. Joelle Saunders (@joellebib) • Instagram photos and videos. We have not taken possession of the raw data for Instagram (if that is even possible) because nothing in the posts is relevant or responsive, and we have confirmed that she sent no responsive messages through Instagram.

**Text Messages from Ms. Saunders**
Ms. Saunders has reaffirmed that she did not text anyone about Walmart or anything relating to this case or the underlying facts.

**Private Investigator**
We have contacted the private investigator's office and left a message. As of this writing, we have not yet received an answer regarding whether the private investigator audio recordings of any interviews. Again, we are willing to produce the Investigator's written summaries (which is all we have) so long as you are not going to claim that you can depose EEOC employees or the Private Investigator regarding their communications about the interviews. We maintain that this is attorney work product and do not wish a partial production to be construed as a waiver.

**EEOC Investigator**

The EEOC Investigator interviewed Huckabee and Bradley via telephone with counsel then representing Walmart on the call. This means that Walmart's attorney was able to memorialize these interviews as easily as the EEOC Investigator. I don't believe you ever provided the kind of detail on a privilege log that would let us determine whether you received those notes or not, but it might be worth a call to your client to request them from Littler.

I should have been clearer about the specific name of the file in which the notes are maintained. The investigator notes exist only in the Investigator Memorandum (listed on the Revised Privilege Log), in Interview Reports (listed on the Revised Privilege Log), or the Pre-Determination Interview Report (listed on the Revised Privilege Log). Thus, you are incorrect in your waiver argument. We asserted the Governmental Deliberative Process Privilege (GDP) for all of these files. In an effort to be certain that the investigator did not have any other form of notes beyond what she provided to prior counsel for EEOC, I did personally confirm that she doesn't save anything relating to her investigations outside of the system from which that Revised Privilege Log was created.

**Amended Privilege Log**

We need to provide an updated privilege log that covers any privileged items in Saunders' email. We hope to have that to you tomorrow or Friday. We did not want to hold the production today until that log was complete. I hope you will not contend that is a waiver.

**Facebook Raw Data for Saunders**

We cannot manually produce the raw data from Facebook (as we did with the emails found with search terms) due to the size and format. This production would have to be run by Litigation Support and that will take a week or so. As we explained in the call, this data is voluminous and difficult to review and comprehend. We previously produced as we did in the interest of identifying what was salient after a painstaking review of a massive amount of information. We understand you would like more information. Would you provide search terms to make the burden of the production and the time that it will take you to review what is produced reasonable and proportionate. We are working hard to preserve the trial date and to provide the responsive information in the most useable format.

**Riveras and Villalobos Email and Social Media**

We are working to provide an update on these issues. We do not have the answers we need to talk about these issues at this point.


Regards,

Barbara J. Wells
Trial Attorney
U.S. EEOC-Birmingham District Office/Mobile Local Office
(205) 651-7041



CONFIDENTIALITY NOTICE:  This e-mail message and any attachments are private communication sent by the U.S. EEOC, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, you are notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message or calling 205.651.7041, and delete the e-mail and any attachments from your system. Thank you.

---

**From:** Lyons, Angelique <ALyons@constangy.com>
**Sent:** Wednesday, November 8, 2023 12:26 PM
**To:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; BRYAN GRAYSON <BRYAN.GRAYSON@EEOC.GOV>
**Subject:** RE: Follow up to our call today on Walmart case

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Barbara,

As a follow up to your email below:

1. We still have not received any of the emails you referenced on Monday, and we have not received a list of the search terms used on the emails.  Please send both of those today so that we can determine if any additional searches are necessary.
2. The "victim impact statements" are not privileged.  Even if they were privileged, the statements were not listed on the privilege log which was prepared after Ms. Saunders claims to have read those statement.  Accordingly, any privilege that may have existed has been waived.  Please send those statements today.
3. The witness interviews conducted by the private investigator are also not privileged.  Those statements were taken months ago and were not listed on the privilege log.  Accordingly, any privilege that may have existed has been waived.  Please send those statements today.
4. The witness interview notes made during the EEOC's investigation of the charge are not listed on the privilege log.  The log makes reference to interview reports, but does not mention any interview notes.  Accordingly, please send those documents today.
5. We want all of the Facebook data, as well as Instagram, for Ms. Saunders.  Please provide an estimated time when you can send us these items.
6. Please update us on the search for social media (not limited to Facebook) and emails from Ms. Riveras and Ms. Villalobos which may be relevant.  We are happy to provide search terms but first need to know what potential universe of information they have.

As mentioned during our call, time is of the essence.  The court originally ordered the deposition to occur this week, and I am reluctant to indefinitely delay and thereby not be in compliance with the court order.  Obviously, we cannot take her deposition until we receive all of this outstanding discovery.

Thanks.

---

**Angelique Lyons**
**Partner - Tampa and Port St. Lucie Office Head**

Constangy, Brooks, Smith & Prophete, LLP
Direct: 772.878.5767 • Direct Fax: 772.905.2541
E-mail: ALyons@constangy.com •View Bio/VCard
1860 SW Fountainview Blvd.
Suite 100
Port St. Lucie, FL 34986
Main: 813.223.7166
\*\*\*

---

**From:** BARBARA WELLS <BARBARA.WELLS@EEOC.GOV>
**Sent:** Monday, November 6, 2023 7:13 PM
**To:** Lyons, Angelique <ALyons@constangy.com>; Morejon, Amanda M. <amorejon@constangy.com>; Borso, Heather <HBorso@constangy.com>
**Cc:** AUSTIN RUSSELL <AUSTIN.RUSSELL@EEOC.GOV>; BRYAN GRAYSON <BRYAN.GRAYSON@EEOC.GOV>
**Subject:** Follow up to our call today on Walmart case

Dear Angelique and Amanda,

        Thank you for talking to us today about discovery issues. Our concerns about the completeness of the EEOC's document production arose when we discovered that EEOC did not have in its document review software anything relating to Ms. Saunders' Facebook Messenger messages despite such messages having been discussed in her deposition. As you know, neither Austin nor I were counsel of records during discovery. We have been playing catch up trying to get through our ESI as well as that of Walmart's as we prepared for trial. Once we discovered that Facebook data needed to be ingested and reviewed, we did so and we produced it to you. In court on October 20, 2023, we heard your dissatisfaction with the limited context provided with the production in late September. As a result, we are committed to transparency and that is why we wished to talk to you before producing the further materials we discussed today. As we said, we have spent the time since finishing review of all Ms. Saunders' Facebook Messenger (which we certified on 10/27/2023) and going back over all ESI in our possession in this case. We have identified the following additional documents to be produced as we discussed in today's call:

1. **Indeed job search information for Ms. Saunders**:

This material is not voluminous. It relates to Ms. Saunders' job search after her dismissal. As the retaliation claim was dismissed, we do not believe these documents are relevant to the remaining issues in the case. However, as the documents are responsive to Defendants' discovery requests, we produced them today.

2.   **Facebook posts**:

Today we also produced 13-14 screen shots of arguably responsive Facebook posts. As we explained, the underlying data for the Facebook collection is not organized in a way that is easy to review or comprehend because it is not threaded properly. There are separate data threads for each access point IP address. There are separate data threads for images and emojis. The data exists for all dates since Ms. Saunders got on Facebook. We are producing the screen shots now we identified through talking to Ms. Saunders, but we are prepared to further search the posts and to produce the data if you believe that is necessary.

3.   **Saunders' Email:**

We have in our possession a large volume of email records from Ms. Saunders' personal email account. Most of her email activity is related to on-line shopping. However, we did locate some email messages relating to her job search which we will produce due to the responsive nature of the messages. This is not a large number of messages. We will also produce the messages located that are arguably responsive on the issue of damages. Again, we are erring on the side of overproducing content but not dumping volume for you to have to sort. We will provide you with search terms Austin and I used in reviewing the email. We will conduct other searches if you provide terms. As I mentioned on the phone, I personally reviewed every email in this account (to and from Ms. Saunders) for the period between April 1, 2018 and October 31, 2018. Due to its volume, the rest of the email was reviewed using search terms. All hits from the search terms were reviewed either by Austin or myself for relevance, responsiveness, and privilege/work product. We will be producing those arguably responsive emails that are not subject to a privilege or work/product doctrine.

There were some attorney client and work product materials in the email which we have located, and we will amend our privilege log. We had intended to list the victim impact statements from Joelle's parents on the privilege log as they were done at request of counsel, but you have asked that we produce them and again in the spirit of cooperation and ameliorating any possible prejudice, we will produce them so long as you do not argue that waives any privilege relating to the documents or conversation on the topic. We understand you need to ask your client about that.

4. **Private Investigator Interview Notes:**

Prior to the dates on which either Austin or I were assigned to handle this case, a Commission attorney hired a private investigator to serve some deposition subpoenas and to interview some witnesses formerly employed at the DeFuniak Springs Walmart. Those interviewed are Teresa Torres, Wayne Leach, Courtney Huffstutler, and Rob Haubensack and his wife. As we said, these are protected by attorney work product doctrine because they were conducted at the request of a Commission attorney. Despite the protected nature of the documents, we are willing to produce them as a show of good faith and as an attempt to ameliorate any claim of prejudice from the erroneous failure to timely list them on the privilege log. However, we cannot do so unless you agree that you will not argue that as a waiver of any privileges beyond the statements themselves. We understand that you need to ask your client about that point, and we will await your answer. We do not intend to try to admit the documents in evidence.

Our intention is to produce on a rolling basis and using an index to assist you in understanding what we are producing. We appreciate that you agreed to allow PDF production to expedite production. Obviously, we retain the underlying native version should you wish to see that format upon reviewing the PDFs. It is just unwieldy for use with a jury or even meaningful review.

**Other issues you raised during the call:**

- You asked if the private investigator recorded the conversations of those he interviewed. We do not know so we will inquire.

- You asked that we look into whether there are audio recordings and notes from the EEOC investigator. We confirmed there are no audio recordings. Any written notes from the investigator were either previously produced or identified on the EEOC's privilege log. I spoke with the investigator personally today. She remembers the case clearly. She did not record any interview of any person in connection with this matter. In fact, she never records such interviews. Her notes are listed on our prior privilege log in addition with the legal basis for withholding them. I don't find any evidence in what correspondence relating to the case I have reviewed that shows any attempt by you or prior counsel for Walmart to dispute the privilege asserted.

- You asked that we produce the victim impact statements. As I said we believe these are protected by the attorney work product doctrine, and we do not anticipate calling either of Ms. Saunders' parents, who provided the victim impact statements. As a show of good faith, we are willing to produce these statements provided you agree not to argue any waiver of any privilege for further information relating to the statements.

- You asked about Facebook and email messages for Ms. Villalobos and Ms. Riveras. We will ascertain if they have email accounts and whether they used them to email Walmart employees or each other or Ms. Saunders (although that would have shown up in Ms. Saunders' email). As you know, they no longer have claims in the case. Ingesting, reviewing, and producing ESI can be time consuming depending upon volume. If we can work together to come up with strategies to focus the review that will speed things up. Let's discuss a mutually acceptable approach when we have a better sense of whether there is or is not currently any responsive data (I am told prior counsel inquired of them and they said that they had nothing responsive, but we will ask again). If there is anything potentially responsive, we will produce it. Unfortunately, at this point, we are without good information on whether or not they have or use email (although it seems likely that at least Ms. Riveras did) and whether they have or had any active Facebook account at any point from 2018 to present. For what it is worth, we did not limit our search of Ms. Saunders' email to the time of her employment or after, but conducted her searches against the full email cull as it could be that items relating to damages issues could be present in them.
- You asked about text messages. We do not have any, but we will double check to make sure that Ms. Villalobos, Ms. Riveras, and Ms. Saunders have responsive text messages. I cannot say whether they were asked this before or not because I do not know. We will be sure to circle back on that point as well.  I can tell you there are not any such text messages in the ESI we presently possess.

As I said on the call, we are doing all in our power to ameliorate any possible prejudice caused by incomplete discovery responses. We don't think the judge will want to delay this further, but we also want you to be confident you have what you were owed. As I pledged to you on the phone, we are committed to fixing this now that we know of it and wanted to disclose this before we reached the timing of Ms. Saunders' redeposition.


Regards,

Barbara J. Wells
Trial Attorney
U.S. EEOC-Birmingham District Office/Mobile Local Office
(205) 651-7041



CONFIDENTIALITY NOTICE:  This e-mail message and any attachments are private communication sent by the U.S. EEOC, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, you are notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message or calling 205.651.7041, and delete the e-mail and any attachments from your system. Thank you.