## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:21-CV-1051-TKW-HTC |
| WALMART INC. and WAL-MART STORES EAST, LP, | ) ) ) | |
| Defendants. | ) | |

## EEOC'S MOTION FOR PROTECTIVE ORDER WITH SUPPORTING INTEGRATED MEMORANDUM

Plaintiff Equal Employment Opportunity Commission ("EEOC") respectfully submits this motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c). EEOC seeks protection only from a part of Defendants' December 8, 2023 request that EEOC produce 525 additional screenshots of Joelle Saunders' Facebook posts[1] and Defendants' modified request on the afternoon of December 13, 2023. Most of the posts requested occurred more than five years prior to her employment with Defendants and the sexual harassment she experienced during that employment. Defendants oppose this motion arguing that everything they have requested goes to Saunders' allegedly pre-existing emotional state. This claim

---

[1] EEOC produced some screenshots Defendants requested, but rather than trying to figure that out, EEOC produced the listed items within the date range.

strains credulity with respect to many of the posts Defendants requested. Defendants' current position is inconsistent with their position at the November 28, 2023 hearing when they acknowledged that the only relevant period for the Facebook post screenshots was January 1, 2018 through October 4, 2023. Rather than focusing on the period beginning 4 months before she began working for Defendants and more than 5 years later, Defendants now demand production of screenshots of Facebook posts between 2010 and 2017, an *additional* 8 years. There is no precedent for such extensive discovery of Saunders' online activity over more than 14 years in a case arising out of sexual harassment Saunders endured during a period of approximately 4 months in 2018.

The Court has summarized the prior history of discovery in this case in its prior Orders, including the November 29, 2023 Order (Doc 133).[2] The current trial attorneys for EEOC are the ones who realized the problems with discovery and ethically followed Federal Rule of Civil Procedure 26(e)(1) requiring supplementation. They are also the ones who have experienced the pains of the compressed discovery. Since bringing its prior failure to review and produce certain categories of responsive discovery materials to the Defendants' attention beginning in late September 2023, EEOC has completed the Herculean tasks required of it to

---

[2] While the current discovery issues relate to EEOC's non-compliance, most of the discovery issues in this case arose from Defendants' non-compliance.

purge any prejudice to Defendants arising out of EEOC's untimely discovery actions in this case.[3] With each production, Walmart has asked for more, and EEOC has provided more.

The parties negotiated the Joint Stipulation and Proposed Order for Discovery Relating to Electronically Stored Information prior to Defendants' current counsel taking over the defense. (Doc. 26). The Court entered an Order adopting the Joint Stipulation on April 22, 2023. (Doc. 27). The Joint Stipulation explicitly identified the relevant unstructured ESI sources in which the parties believed there might be relevant information as being the personal email accounts of Saunders, Riveras, and Villalobos. (Doc. 26). It does not identify any social media account as being a source relevant or responsive information. *Id.* Nevertheless, the Court has ordered EEOC to produce copious amounts of social media information from non-party witnesses, and EEOC has done so.  The parties stipulated that the EEOC would preserve the

---

[3] The EEOC reviewed more than 240,000 email messages from three custodians. This resulted in production of around 3,100 email messages not previously produced. Most those emails were spam email from Walmart accounts but were responsive to a request for all communication between the parties. While responsive, they are not in any way relevant to any issue currently or formerly in the litigation. Of these only about 817 emails related to Saunders, the sole aggrieved party with claims left in the case. Most of those emails relate to Saunders' efforts to find work after Defendants fired her and pertain only to the dismissed retaliation claim. EEOC's attorneys have reviewed social media activity from three custodians on multiple accounts from January 1, 2018 to the collection dates in 2023. EEOC accomplished all of this in approximately 6 weeks to preserve the Court's trial setting.

email messages from Saunders, Riveras, and Villalobos for the period between *January 1, 2018, and September 21, 2021. Id.* Obviously, EEOC has subsequently collected, reviewed, and produced email messages from a much broader period (through 2023).

Despite the stipulated limitations on source and scope of ESI discovery, Defendants propounded written discovery requests seeking production of all kinds of ESI, including social media posts and messages from Saunders, Riveras, and Villalobos concerning the allegations of the Complaint, Defendants' defenses, or alleged damages of Saunders, Riveras, and Villalobos for an unspecified period. (Doc. 131-3). EEOC objected to these requests for production.

At the hearing on November 28, 2023, EEOC understood the Court to have limited EEOC's further discovery obligations with respect to screenshots of Saunders' Facebook posts to the period from January 1, 2018 to the collection date for Saunders' Facebook (October 4, 2023). Nevertheless, contrary to both that limitation and the temporal limitations agreed in the Joint Stipulation and Proposed Order for Discovery Relating to Electronically Stored Information (Doc. 26), Defendants now demand that EEOC produce screenshots of Saunders' Facebook posts going back as far as 2010 and many without any connection to any claim, defense, or damage issue.

The Court ordered EEOC to review the live version of Saunders' Facebook page and produce screenshots of all relevant and responsive posts, as those posts are typically seen through the normal user interface and to certify its compliance by no later than December 6, 2023. (Doc. 133). EEOC complied. The Court also ordered EEOC to produce to Defendants all logs of posts that it obtained from Saunders' Facebook account by no later than December 6, 2023. *Id.* EEOC produced those logs on December 1, 2023. The Court's order allowed Defendants to seek additional screenshots of posts based upon review of the log upon making a request by no later than December 8, 2023, and gave EEOC until December 13, 2023, to produce the additional posts or seek protection from the Court if it disagrees with Walmart's request. *Id.*

At 5:14 p.m. on Friday, December 8, 2023, EEOC received a list of the Facebook posts of which Defendants sought additional screenshots beyond those screenshots EEOC previously produced. *See* Exhibit 1 (EEOC has attached as Exhibit 1 to this motion the Dec. 8, 2023 email and attached list). Using the logs EEOC produced on December 1, 2023, Defendants requested screenshots of approximately 525 Saunders' Facebook posts and associated comments. Of the 525, approximately 96 appeared to be within the period to which all agreed in the

November 28, 2023 hearing.[4] EEOC prepared for production on December 13, 2023, screenshots of all posts Defendants requested that actually had dates within the period of January 1, 2018 and October 4, 2023. This process took more than three full days and the labor of more than one attorney.[5]

At 1:00 p.m. on the date the production was due, Defendants sent EEOC a reduced list of requested screenshots. *See* Exhibit 2 (EEOC has attached a copy of the December 13, 2023 email and attached revised list as Exhibit 2 to this motion). EEOC does not dispute that 96 of those requested screenshots are within the relevant period and EEOC is producing them on this date. EEOC objects to producing the 275 requested screenshots from outside the defined relevant period. The following table shows the distribution across years for the requests EEOC objects to producing.

| Year | Number of Screenshots |
|------|----------------------|
| 2017 | 18 |
| 2016 | 53 |
| 2015 | 59 |
| 2014 | 7 |
| 2013 | 26 |
| 2012 | 57 |
| 2011 | 53 |

---

[4] Some of the date errors in Defendants' list make it appear that additional posts were within the date range, but in fact those were not. Further detail on this point is in EEOC's Notice of Compliance filed on this date.

[5] Defendants provided a list of the Bates number of the page of the log on which they located information of interest, a putative date of the post or comment, and the first five words of the post or comment they wanted EEOC to produce as screenshots. Unfortunately, there were errors in several of Defendants' dates and descriptions that made finding the requested information more difficult and time-consuming than the simple process of creating the screenshot.

| 2010 | 2 |
|------|-----|
| **Total** | **275** |

EEOC objects to gathering the requested screenshots from prior to January 1, 2018. Given that Saunders worked for Defendants only from April 2018 through October 1, 2018, the posts prior to January 1, 2018, in no way relate to liability issues. Defendants made no effort whatsoever to specifically connect the content of any of the requested posts from outside of the date range to any argument that the information Defendants seek could only possibly inform another issue such as damages or credibility. Instead, they made a blanket assertion of relevance. Because it was not possible to gather all the pre-2018 posts in time, EEOC randomly selected one post from each of the years 2010 through 2017 from Defendants' list and created a screenshot. This random sampling show just how disconnected Defendants' requests are from relevant and responsive content. *See* Exhibit 3 (EEOC attached these 8 randomly selected screenshots as Exhibit 3 to this motion).

Discovery requests must be *reasonably* calculated to obtain information relevant to any party's claim or defense and also be proportional to the needs of the case. Discovery in this case has veered far from the required proportionality. As ordered, EEOC has reviewed and produced volumes of information that while responsive to Defendants' overly broad requests for production of documents are not demonstrably relevant to the issues before the Court. This has been true of nearly

every responsive item EEOC has produced pursuant to the Court's November 29, 2023.

It is not only the volume of materials requested in a compressed period to which EEOC objects. It also objects to the temporal scope of the requests which exceeds the period the Court approved. Furthermore, as the Court can see from the first five words of the post on Defendants' charts, many of these posts would not be responsive or relevant even if in the defined relevant period. Not only is the burden of Defendants' request disproportional to any likely location of relevant information, but the requests far exceed that which the Federal Rules of Civil Procedure require.

For example, Defendants appear to have requested any post relating in any way to sexuality or containing profanity as if one's sexuality or use of blue language outside the workplace is relevant to the welcomeness of a coworker's workplace sexual advances. Despite finding in their own internal investigation that the gross sexual misconduct occurred, Defendants deny both that Saunders experienced harassment and that she suffered any new emotional distress because of that harassment. The logical construction of Defendants' requests is that to claim *any* emotional distress damage from workplace harassment, a person must never have experienced any of the feelings the harassment generated at any point in the person's prior life. This position equates to victim-blaming and finds no support in the law.

Moreover, EEOC has made it clear that given the extensive list of more posts across the entire history of Saunders' Facebook activity would take longer than the Court has allowed. Defendants' after hours request on Friday, December 8, 2023 exacerbates the difficulty of EEOC's attempt to comply. Producing the roughly 20% of the original requested 525 posts took days. EEOC cannot prepare all this for production in time for the Wednesday, December 13, 2023 deadline, nor should EEOC have to do so. The Birmingham District Office has strained under the weight of complying with the enormous task of collection, production, and review in accordance with the Court's Orders. The fact is that EEOC has done more than enough at this point to respond to ridiculously overreaching discovery demands.

For this reason, EEOC respectfully requests that the Court enter an Order protecting it from having to produce any screenshot Defendants requested that from prior to January 1, 2018 and to further accept the EEOC's proffered production of the additional screenshots for the relevant period described in Court on November 28, 2023 and end Defendants' endless and fruitless fishing expedition.

DATED: December 13, 2023.

Respectfully submitted,

/s/ Barbara J. Wells
Barbara J. Wells
Trial Attorney
Ala. Bar No. 1658R58B
barbara.wells@eeoc.gov
Tel. (205) 651-7041
Fax. (205) 212-2041

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205

Marsha L. Rucker
Regional Attorney
Pa. Bar No. 90041

Gerald L. Miller
Assistant Regional Attorney
Ala. Bar No. 1454-E52G

Bryan A. Grayson
Supervisory Trial Attorney
Ala. Bar No. 8944N65G

Austin T. Russell
Trial Attorney
Ala. Bar No. 6418S13J
austin.russell@eeoc.gov
Tel. (205) 651-7079
Fax. (205) 212-2041

## CERTIFICATE OF COMPLIANCE LOCAL RULE 7.1(B)

At EEOC's request, counsel for all parties conferred in good faith via telephone on December 12, 2023, to attempt to resolve their disagreement about the production of Saunders' screenshots outside the relevant period. EEOC explained that it would not be possible to prepare all the requested posts by the Court's December 13, 2023 deadline. EEOC also explained that it objected to providing screenshots for posts Saunders made prior to January 1, 2018, as that was outside of

the contemplated date range to which all agreed at the November 28, 2023 hearing. EEOC explained that it would file this motion for posts outside of the period from January 1, 2018 through October 4, 2023, the agreed relevant period for review and production the Court imposed in the November 28, 2023 hearing. EEOC also argued that Defendants could not connect posts outside the relevant period to legitimate issues in the case. Defendants indicated that they would contact EEOC on the morning of December 13, 2023, regarding whether they were willing to reduce the requested screenshots to those in the relevant period.

At 1:00 p.m. on December 13, 2023, Defendants advised EEOC by email that it was reducing the requested screenshots from by approximately 150 (by EEOC's count the number of requests went from 525 to 371). Defendants did not make anything more than a conclusory effort to explain how the materials were relevant and responsive. Thus, the parties could not reach a resolution as to a reasonable and proportionate production of screenshots over and above the previously produced raw data.

/s/ *Barbara J. Wells*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This motion is submitted without a separate supporting memorandum. While the integrated motion and memorandum exceeds 500 words, I certify that I have complied with Local Rule 7.1(F)'s word limit because this document (including

footnotes, headings, and quotations and certificates other than the certificate of service) contains 2,639 words.

/s/ *Barbara J. Wells*

## **CERTIFICATE OF SERVICE**

I hereby certify I electronically filed this document on December 13, 2023. The Court's electronic filing systems will forward notice of this filing to all parties indicated on the electronic filing receipt.

/s/ *Barbara J. Wells*
Barbara J. Wells