**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff,** **CASE NO. 3:21-CV-1051-TKW-HTC**

**v.**

**WALMART, INC. and WAL-MART STORES EAST, L.P.,**

**Defendants.**
**_____________________________/**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

Defendants Walmart, Inc. and Wal-Mart Stores East, L.P. (hereinafter "Walmart"), by and through their undersigned attorneys, hereby respond to Plaintiff EEOC's Motion for Protective Order.

## I. INTRODUCTION

This Court should deny the EEOC's Motion for Protective Order. Walmart is only asking the EEOC to produce screenshots of Facebook posts that are relevant to the issues in this case. The date of the post alone does not determine whether the post is relevant or discoverable. The task of producing the screenshots is not onerous as the EEOC already has the records and merely has to take screenshots of specifically identified posts. The short time period in which the EEOC has to

produce these screenshots has been caused by the EEOC's own failure to meet its discovery obligations in this case. Since Walmart has already been prejudiced by the EEOC's failure to properly produce these records over 10 months ago, the EEOC cannot now claim that it is unfair to require the EEOC to produce these documents due to the timing.

## II. FACTS

As the Court is very familiar with the EEOC's failure to meet its discovery obligations in this case, Walmart will not set forth the extensive history which put the parties in the current situation. Following the Court's Order dated November 29, 2023, the EEOC was required to produce certain documents, including Ms. Saunders' Facebook log. The EEOC sent Walmart the Facebook log at 5:54 pm on Friday, December 1, 2023. The log was over 1,400 pages. Walmart reviewed the log, and created a spreadsheet of the posts for which it requested a screenshot, identifying each post by bates number, date and the first couple of words of the post for ease of reference. The spreadsheet was sent to the EEOC on its due date, December 8 at 4:54 central time (which is the time zone where the attorneys for the EEOC are located). Dkt. 138-2. Four days later, the EEOC notified Walmart that it intended to seek a protective order related to this production and requested a phone call to discuss. The parties spoke that same day at 3 pm central time. During this conversation, the EEOC took the position that none of the screenshots for posts prior

to January 1, 2018, would be produced because of the time period and also because of the number of posts requested. Walmart explained that the posts were relevant and discoverable, and that most of the posts related to Ms. Saunders' mental health. Additionally, counsel for Walmart offered to review the list of posts to see if the number could be reduced. The following day, Walmart notified the EEOC that in an effort to resolve this dispute, it had reduced the number of posts by 150. Notwithstanding Walmart's efforts to reach a resolution, the EEOC filed the instant Motion for a Protective Order.

## III. LEGAL STANDARD

"The Federal Rules of Civil Procedure strongly favor full discovery whenever that is possible." *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020)(citations omitted). The party who seeks a protective order has the burden to establish the existence of good cause. *Id.* To establish good cause, the moving party must how specific prejudice or harm will result if no protective order is given. *Id.*

In this case, Walmart has been denied full discovery due to the EEOC's failure to meet its discovery obligations. The Court has taken steps to mitigate the harm to Walmart caused by the EEOC's actions. Requiring the EEOC to produce screenshots of identified Facebook posts does not amount to prejudice or harm to the EEOC, especially since the EEOC has the ability to do so with minimal effort. Denying Walmart access to screenshots of the identified Facebook posts would be prejudicial

to Walmart as these posts are relevant to the issues in this case, and any burden of producing the records was created by the EEOC's failure to meet its discovery obligation.

## IV. THE REQUESTED FACEBOOK POSTS ARE RELEVANT

The Facebook posts identified by Walmart are relevant and discoverable. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Facebook posts identified by Walmart for which it requests a screenshot are relevant. Specifically, the vast majority of the posts fall within three main categories – Ms. Saunders' mental health, Ms. Saunders' habit of posting about her work/co-workers, and Ms. Saunders' habit of addressing people who harass/annoy her. All three of these categories are relevant to the issues in this case[1]. The dates of the posts do not dimmish or eliminate the relevance of these Facebook posts.

[1] To the extent the EEOC argues that Walmart "made no effort whatsoever to specifically connect the content of any of the requested posts from outside of the date range to any argument that the information Defendant s seeks could only possibly inform another issue such as damages or credibility." Dkt. 138, p. 7. The Court's November 29, 2024 Order did not require Walmart to provide an explanation as to the relevance of the posts for which it was requesting a screenshot. During the parties' conferral discussion, Walmart attempted to explain the relevance of the documents but the EEOC took the position that it was not going to produce any post prior to January 1, 2018, thereby making any discussion as to the specific relevancy of any documents moot.

**A. The content of the posts are relevant to the issues in this case.**

**1. Posts speaking to Ms. Saunders' mental health and emotional condition.**

Information relating to Ms. Saunders' mental health and emotional condition are relevant to the issues in this case. Ms. Saunders is claiming that she suffered anxiety and depression as a result of the alleged harassment she experienced at Walmart. Walmart is entitled to discovery on whether Ms. Saunders was experiencing symptoms of depression and anxiety prior to her employment at Walmart, and to explore other stressors in Ms. Saunders' life that caused and/or contributed to Ms. Saunders' alleged emotional distress.

A significant number of the Facebook posts speak to Ms. Saunders' mental health in the time period immediately preceding the alleged harassment. For example, Ms. Saunders made the following posts:

- March 28, 2011 - What to do when rock bottom looks the most welcoming… (Bates 738).
- September 21, 2011 - Zoloft Zoloft Zoloft. (Bates 1801).
- August 2, 2015 - As an insecure person that struggles DAILY to remain functional through the anxiety of my body image… (Bates 1500).
- June 3, 2016 - Cyanide sounds fantastic. Lots of cyanide… (Bates 1367).
- April 1, 2017 - My thoughts on suicide as a personal survivor of several

attempts and a survivor of the attempts of people I love are obvious…I will forever share her story. (Bates 1218).

- September 19, 2017 - Depression has no face or mood. (Bates 1178).

Exhibit A.

These posts show that during the period from 2011 until her employment at Walmart, Ms. Saunders experienced various situations that caused emotional distress. Walmart should be permitted to explore these issues during Ms. Saunders' deposition to ascertain whether she was experiencing mental health issues leading up to her employment with Walmart, and the state of her mental health in 2018. In fact, the EEOC filed a motion in limine to prevent Walmart from introducing evidence that Ms. Saunders was on medication for depression and anxiety while she was in high school in 2009, arguing that Walmart could not establish that any depression and/or anxiety that began in school continued up until the time she worked at Walmart. Dkt. 113, p. 2. This newly discovered evidence goes specifically to this very issue. This evidence is relevant to Ms. Saunders' mental health leading up to the alleged harassment, which speaks directly to causation of any alleged depression or anxiety Ms. Saunders' claims was caused by Walmart.

**2. Posts by Ms. Saunders regarding her co-workers and workplace.**

A significant number of Facebook posts speak to Ms. Saunders' workplace

and co-workers. Ms. Saunders frequently posted about any issues or displeasure she had with her job or coworkers from 2011 through 2017. For example, Ms. Saunders made the following posts:

- February 23, 2012 – our shipment guy is such a toolbag. If you cant start unloading until 10 why the hell did you rind the bell at 9:50? Just to let me know you don't wanna be here? I don't want you to be here either, buddy, but such is life. Find better wishing wells or just stfu. (Bates 1706).
- March 19, 2012 – Finally, a girl coworker to break up the sausage fest that has been my doubles. (Bates 1696).
- September 22, 2012 – Going in early to work early so nobody is working alone? Sure. Go in early only to find out that I'm still closing by myself? Fuck you. (Bates 1654).
- September 29, 2012 – I work with the most useless people. (Bates 1653).
- November 4, 2012 – Dear customers, I don't picture you in tour [sic] underwear – I picture you dead. (Bates 1646).
- April 30, 2016 – When your soon to be former co worker texts you and says "tonight's gonna be like those movies where everyone talks about their misunderstandings and cry over silly things" Bitch….no. No. No, I'm going to eat your soul for eternal youth. (Bates 1382).
- March 24, 2017 – When your manager walks the fuck out and your DM is

like "hey new girl, wanna live here?!" "No." "Great – wait, what? Oh. Well. You're gonna anyway." (Bates 1223).

- March 28, 2017 – "I saw you pull up early for your shift, you don't have to sit in your car, you can come in the store." No. No, thank you. Thanks but no. All of the no. (Bates 1221).

Exhibit B.

This type of posts is discoverable as they speak to Ms. Saunders' habit of posting information regarding her workplace, specifically people and things at work that annoy or bother her. Given that Ms. Saunders has testified that Mr. Pollock annoyed and bothered her at work, Ms. Saunders' habit in addressing these types of situations is relevant and Walmart should be provided the Facebook screenshots so that it can explore this issue during Ms. Saunders' deposition.

**3. Posts by Ms. Saunders aimed at individuals who have offended, assaulted or insulted her.**

In a significant number of Facebook posts, Ms. Saunders commented on various incidents in her life where someone assaulted, offended or insulted her. For example, Ms. Saunders made the following posts:

- November 12, 2011 – when a guy tries to hit on you with atrocious grammar…while being dead serious about it…giggle. Come see me at journeys guys. (Bates 1765).

- September 26, 2013 – I'm already upset that you're so stupid and have not only lived this long, but also have been breeding….don't try to make trouble for my family…I will end you… (Bates 1580).
- June 7, 2014 – I can be the sweetest person in the world… Here's the thing… I am also the biggest bitch on the face of the planet and I will eat the sole of your first born. Remember that. Happy Saturday! (Bates 1541).
- October 10, 2015 – when your already drunk neighbors notice you drinking on your porch and try to make friends, but a shot of whiskey gets them feeling a little too comfortable and they decide to try and tell you why you're single according to the good ole boy handbook…and an intense debate over modern dating and romance being on its death bed ensues… By debate I mean I interrupted and talked louder than them "look, here's your prob - insert rant - Cue speechless neighbors yeah bitches, yeah. (Bates 1470-71).
- January 15, 2016 – Dad hires construction crew to lay out new kennel. Construction crew is mostly "young bucks" a little too into themselves. "nice hair" Thanks "Like tats? I have a sleeve." You have what looks like maybe a nipple tattooed on your arm . . . shut the fuck up and get the fuck away from me. (Bates 1414).

- April 28, 2016 – You can fuck off with those fucking crocodile tears, bitch, you're not fucking fooling me. (Bates 1383).

Exhibit C.

These posts speak to Ms. Saunders' habit of addressing situations that annoy, harass or offend her straight on and aggressively, either in person or on Facebook. This speaks directly to the issues in this case, as Ms. Saunders alleges that Mr. Pollock sexually harassed her and she never spoke up, asked him to stop, or even posted on Facebook about it. Ms. Saunders' habit in these types of situations is discoverable, and Walmart should be permitted access to the Facebook screen shots so that it can explore this issue further in Ms. Saunders' deposition.

**B. The date of each post does not render it irrelevant or outside the scope of discovery.**

The Court's Order instructed the EEOC to "produce to Walmart **all** logs of posts that it has obtained from Saunders' Facebook page." Dkt. 133, p. 5. The Court stated that if Walmart wants to see any other screenshots of posts that are on the log, Walmart shall notify the EEOC." Dkt. 133, p. 5. The Court's Order did not limit this to posts from a certain date.

The date of the post alone does not determine whether the documents are discoverable or relevant. The EEOC's Motion does not contain any argument that these posts are not relevant based on the time of the post, but only that the posts

exceed the relevant time period discussed during the hearing on November 28, 2023. While it is true that a time period was discussed during the hearing, neither the Court nor counsel for Walmart had the benefit of reviewing the Facebook logs at this time. The Facebook logs clearly show that there is relevant and discoverable information contained in Ms. Saunders' Facebook posts that pre-date January 1, 2018. Walmart should not be preventing from obtaining screenshots of these posts when it is clear that these posts are discoverable and relevant.

## V. WALMART'S REQUEST IS NOT UNDULY BURDENSOME

Walmart has asked the EEOC to produce 250 Facebook posts from a seven year period. The EEOC claims that this is unduly burdensome to produce in the compressed timeframe. First, the compressed timeframe in this case has been caused solely by the EEOC's failure to produce the requested Facebook posts more than 10 months ago during the discovery phase of this case. Second, the act of taking a screenshot is not onerous. As Magistrate Cannon noted during the November 28, 2023 hearing, it is simply the process of taking a screenshot of a Facebook post. Walmart has provided the bates number, date and first couple of words of the requested post, which allows the EEOC to easily locate and identify the requested post. In its Motion, the EEOC stated that it "took more than three full days and the labor of more than one attorney" to produce the Facebook screenshots for 96 posts. Dkt. 138, p. 5-6. That works out to 32 posts a day, for an average of four posts an

hour (assuming an eight-hour workday). This seems extremely slow for "more than one attorney" to identify a post on the log using the bates number, date and first couple of words of the post, and then find the corresponding post on Ms. Saunders' Facebook feed (which is organized by date), and take a screenshot. This entire process should only take one to two minutes per post, especially if more than one attorney is involved in the process.

To the extent the EEOC claims the information provided by Walmart includes some incorrect dates, this does not preclude the EEOC from easily locating the post. First, according to the EEOC, the incorrect date was included for four of the posts. Second, Walmart provided the Bates number and the first couple of words of the post; the fact that the wrong year was listed on four of the posts does not create an undue burden as the EEOC can easily see the correct date on the Facebook log. To the extent the EEOC is unable to locate a specific post, it can easily contact Walmart for clarification.

The EEOC has had the list of posts since December 8, 2023, which was plenty of time to produce the screenshots. To the extent the EEOC needed more time to comply with this production, it could have asked Walmart for an extension as Ms. Saunders' deposition is not scheduled until December 22, 2023. Furthermore, the fact that time is short is due to the EEOC's own failure to meet its discovery obligations during this case, and it is disingenuous for the EEOC to now use this as

a basis for seeking a protective order.

## VI. CONCLUSION

Based on the foregoing, Walmart respectfully requests that this Court deny the EEOC's motion and order the EEOC to produce the screenshots of the identified Facebook posts on or before December 19, 2023.

Respectfully submitted this 15th day of December, 2023.

*/s/Angelique Groza Lyons*
Angelique Groza Lyons, Esq.
Fla. Bar No. 118801
alyons@constangy.com
Secondary Email: tampa@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
100 North Tampa Street, Suite 3350
Tampa, Florida 33602
(813) 223-7166 / Fax: (813) 223-2515

F. Damon Kitchen
Florida Bar No. 861634
dkitchen@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
200 West Forsyth Street, Suite 1700
Jacksonville, FL 32202-4317
Telephone: (904) 356-8900
Facsimile: (904) 356-8200
***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of December, 2023, I electronically filed with the Clerk of Court a copy of the foregoing document via the CM/ECF system, which will automatically serve a copy upon counsel for Plaintiff.

/s/Angelique Groza Lyons
Attorney

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

The undersigned counsel certifies that the word-processing software counts 2873 words in this filing, including headings, footnotes, and quotations.

/s/Angelique Groza Lyons
Attorney